# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 92-IA-00397-SCT

*VIVIAN FAITH SCOTT, BY AND THROUGH HER MOTHER AND NEXT OF KIN, CYNTHIA ANN SCOTT*

*v.*

*JOEL R. FLYNT, M.D.*

| | |
|---|---|
| DATE OF JUDGMENT: | 4/2/92 |
| TRIAL JUDGE: | HON. RICHARD WAYNE MCKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | C. VICTOR WELSH, III |
| | CRYMES G. PITTMAN |
| ATTORNEYS FOR APPELLEE: | F.M. TURNER, III |
| | SANDRA S. MOHLER |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 4/18/96 |
| MOTION FOR REHEARING FILED: | 5/17/96 |
| MANDATE ISSUED: | 12/15/97 |

**BEFORE DAN LEE, C.J., PITTMAN AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## INTRODUCTION

¶1. This case presents the Court with a policy decision regarding the scope of the waiver for the medical privilege as contemplated by Mississippi Rule of Evidence 503 and whether or not ex parte contacts with medical providers are permissible under the rules of discovery in the Mississippi Rules of Civil Procedure. Having reviewed the rules and comments, and attempting to balance the interests and concerns of all, the Court today finds that the scope of the waiver of the medical privilege is limited to *relevant* medical information to the injury placed in issue by the plaintiff. Further, our rules of evidence and procedure prohibit the admissibility of any evidence obtained from any ex parte contacts without prior patient consent by opposing counsel with medical providers of the plaintiff. Accordingly, the lower court's ruling ordering the plaintiff to execute an *unconditional* waiver of her medical privilege is reversed and this case is reversed and remanded.

## STATEMENT OF THE CASE

¶2. This case began December 2, 1991, with the filing of Vivian Faith Scott's complaint, by and through her mother, Cynthia Ann Scott, in the Forrest County Circuit court seeking civil damages against Dr. Joel R. Flynt for negligence (medical malpractice). The alleged medical malpractice occurred on September 21, 1989, during the delivery of Vivian Faith Scott. Dr. Flynt filed his Answer on February 18, 1992, denying the claim and alleging several defenses.

¶3. Discovery began and Dr. Flynt subsequently filed his Motion To Compel Medical Waiver seeking to have the circuit court require the plaintiff to *unconditionally* waive her medical privilege to permit ex parte conversations by the defendant with any and all health care providers of the plaintiff. The plaintiff filed her respective response alleging that the Mississippi Rules of Civil Procedure and her constitutional right to privacy under both the Mississippi and United States Constitution prohibited any such ex parte contacts. The plaintiff contended that she would only allow discovery of her relevant medical records through formal discovery. However, Forrest County Circuit Court Judge Richard W. McKenzie entered an Order on April 2, 1992, granting the requested waiver ordering the plaintiff to execute the *unconditional* medical waiver and permitting ex parte conferences by the defendants with any medical provider of the plaintiff.

¶4. On April 22, 1992, the plaintiff filed her Petition For Extraordinary Relief with the Mississippi Supreme Court. The motion was presented to a three-justice panel which ordered that all discovery of medical information in the matter was to be stayed until further order of the Court. Additionally, the panel found that the petition presented two interrelated questions of law about which there was a substantial basis for a difference of opinion requiring the Court to treat the Petition for Extraordinary Relief as an Interlocutory Appeal.

¶5. The two interrelated questions of law, as determined by the panel, for resolution of this dispute are:

**(1) THE SCOPE OF THE MEDICAL WAIVER AS CONTEMPLATED BY MISSISSIPPI RULE OF EVIDENCE 503, AND**

**(2) WHETHER OR NOT EX PARTE CONTACTS WITH MEDICAL PROVIDERS ARE PERMISSIBLE UNDER THE RULES OF DISCOVERY IN THE MISSISSIPPI RULES OF CIVIL PROCEDURE.**

¶6. The Forrest County Circuit court subsequently entered an Order staying all other proceedings in this action pending the resolution of the Interlocutory Appeal by the Court.

STATEMENT OF THE FACTS

¶7. This case began September 21, 1989, when Cynthia Scott was admitted to the Forrest General Hospital in Hattiesburg, Mississippi, under the supervision of Dr. Flynt for delivery of her baby girl, Vivian Faith Scott. Dr. Flynt also provided Cynthia with prenatal services. Vivian allegedly suffered shoulder dystocia resulting in partial permanent paralysis of her left arm and shoulder following her delivery. However, the issue of medical malpractice is not presently before the Court.

¶8. Approximately two years and two months later, the present complaint for medical malpractice was filed. The parties began discovery creating the disputes over the waiver of plaintiff's medical privilege and the discoverabilty of her medical information which is presently before the Court on interlocutory appeal.

DISCUSSION OF ISSUES

**(1) WHAT IS THE SCOPE OF THE MEDICAL WAIVER AS CONTEMPLATED BY MISSISSIPPI RULE OF EVIDENCE 503?**

¶9. The plaintiff, Vivian, contends that the scope of the medical waiver under M.R.E. 503 and Miss. Code Ann. §13-1-21(4) is limited and not unconditional as ordered by the trial court. She urges the Court to hold that the waiver is limited to *relevant* medical information only. Vivian also contends that a plaintiff in a medical malpractice or personal injury action should be allowed to review any requested medical information prior to its disclosure to prevent persons with personal medical knowledge of the plaintiff from disclosing irrelevant and possibly embarrassing personal information about her medical history. Vivian urges that compounded problems in the form of civil suits for invasion of privacy will result unless such precautions are taken to prevent the disclosure of protected irrelevant privileged information. We agree.

¶10. In support of a limited waiver under M.R.E. 503 and §13-1-21, Vivian points out one case in particular in which we held that the waiver of the medical privilege was a limited and not an unconditional waiver. *Sessums v. McFall,* 551 So. 2d 178 (Miss. 1989). *Sessums* involved injuries to a motorcyclist after being hit by an automobile. *Sessums* held: (1) that testimony of the physician who treated the injured plaintiff about information obtained on *the cause* of the accident was privileged and should have been excluded when the plaintiff objected to the testimony; (2) introduction into evidence of his medical bills and testimony by the plaintiff on cross-examination, denying he made the statements to his physician did not waive his physician/patient privilege as to *the cause* of the accident; and (3) the failure to exclude the physician's testimony about the cause of the accident was prejudicial error. *Id.* at 180-81.

¶11. The essence of *Sessums* was that filing suit and submitting evidence on his injuries *only* waived his medical privilege to the extent of those injuries. *Id.* at 180. Notably however*, Sessums* was a personal injury suit against a third party and not against his physician for medical malpractice. Nevertheless, we find that the waiver is to be treated the same in medical malpractice cases as well.

¶12. Dr. Flynt's contrary viewpoint is that the mere fact of having filed a medical malpractice action means that all information from whatever source which was previously privileged is no longer protected according to his interpretation of M.R.E. 503 and §13-1-21. He further contends that the waiver acts to allow ex parte contacts before the formal discovery processes begin. Therefore, according to Dr. Flynt, when a plaintiff files or gives notice of a claim to be filed for medical malpractice against a physician, that such actions create an automatic and absolute waiver of any medical privilege concerning any of the plaintiff's medical history. We disagree.

¶13. **Mississippi Rule Of Evidence 503. Physician and Psychotherapist-Patient Privilege** states in relevant part:

> **(b) General Rule of Privilege**. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing (A) knowledge derived by the physician or psychotherapist by virtue of his professional relationship with the patient, or (B) confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

**(c) Who May Claim the Privilege.**

The privilege may be claimed by the patient, his guardian or conservator, or the personal representative of a deceased patient. The person who was the physician or psychotherapist at the time of the communication is presumed to have the authority to claim the privilege but only on behalf of the patient.

**(d) Exceptions.**

. . . .

(3) There is no privilege under this rule as to an issue of breach of duty by the physician or psychotherapist to his patient or by the patient to his physician or psychotherapist.

**(e)** In an action commenced or claim made against a person for professional services rendered or which should have been rendered, the delivery of written notice of such claim or the filing of such an action shall constitute a waiver of the privilege under this rule.

**(f)** Any party to an action or proceeding subject to these rules who by his or her pleadings places in issue any aspect of his or her physical, mental or emotional condition thereby and to that extent only waives the privilege otherwise recognized by this rule. *This exception does not authorize ex parte contact by the opposing party.*

**M.R.E. 503** (amended October 13, 1992)(emphasis added).

### Advisory Committee Historical Note

Effective October 13, 1992, Rule 503(f) was amended to state that the rule is inapplicable in contexts other than hearings or discovery proceedings and to delete reference to worker's compensation proceedings. 603-605 So.2d XXI (West Miss. Cas.1993).[1]

### Comment

Subsection (c) is reflective of Miss. Code Ann. §13-1-21. The privilege belongs to the patient, and *only the patient can waive it*.

. . . .

Under the third exception [503(D)(3)] there is no privilege when a controversy develops between physician and patient, such as in a dispute over medical fees or medical malpractice.

Subsection (e) is required by considerations of fairness and policy, and simply provides that the institution of a claim, either by delivery of written notice or by the filing of an action, operates to waive the privilege as to any medical information *relevant* to the claim.

The primary impact of subsection (f) will be in personal injury actions, although the exception by its terms is not so limited. This subsection, like the remainder of these rules, has no application outside the context of hearing or discovery processes in the Mississippi Rules of Civil Procedure and other

rules of court. See Rules 101 and 1101. By virtue of this exception a party who seeks recovery of damages for a physical, mental or emotional injury waives the privilege for purposes of that action only and to the extent that he or she has put his or her physical, mental or emotional condition in issue by his or her pleadings. With respect to any aspect of the party's physical, mental or emotional condition not put in issue by his or her pleadings, the privilege remains in full force and effect. Rules of Evidence by their definition govern the admissibility of evidence at trial. Subsection (f) is not a procedural rule and cannot be used as such.

(**M.R.E. 503** Comment amended October 13, 1992)(emphasis added).

¶14. The primary statute in question is Mississippi Code Annotated Section 13-1-21. §13-1-21.

**Miss. Code Ann. §13-1-21. Communications privileged; exception.**

(1) All communications made to a physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor by a patient under his charge or by one seeking professional advice are hereby declared to be privileged, and such party shall not be required to disclose the same in any legal proceeding except at the instance of the patient or, in case of the death of the patient, at the instance of his personal representative or legal heirs in case there be no personal representative, or except, if the validity of the will of the decedent is in question, at the instance of the personal representative or any of the legal heirs or any contestant or proponent of the will.

(2) Waiver of the medical privilege of patients regarding the release of medical information to health care personnel, the State Board of Health to local health departments, made to comply with Sections 41-3-15, 41-23-1 and 41-23-2 and related rules, shall be implied. The medical privilege likewise shall be waived to allow any physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor to report to the State Department of Health necessary information regarding any person afflicted with any communicable disease or infected with the causative agent thereof who neglects or refuses to comply with accepted protective measures to prevent the transmission of the communicable disease.

(3) Willful violations of the provisions of this section shall constitute a misdemeanor and shall be punishable as provided for by law. Any physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist, or chiropractor shall be civilly liable for damages for any willful or reckless and wanton acts or omissions constituting such violations.

(4) In any action commenced or claim made after July 1, 1983, against a physician, hospital, hospital employee, osteopath, dentist, nurse, pharmacist, podiatrist, optometrist or chiropractor for professional services rendered or which should have been rendered, the delivery of written notice of such claim or the filing of such an action shall constitute a waiver of the medical privilege and any medical information *relevant* to the allegation upon which the cause of action or claim is based shall be disclosed upon the request of the defendant, or his or her counsel.

(5) In any disciplinary action commencing on or after July 1, 1987, against a medical physician, an osteopathic physician or a podiatrist pursuant to the provisions of Sections 73-25-1 through 73-25-39, 73-25-51 through 73-25-67, 73-25-81 through 73-25-95 and 73-27-1 through 73-27-19, waiver of the medical privilege of a patient to the extent of any information other than that which

would identify the patient shall be implied.

**Miss. Code Ann. §13-1-21** effective from and after July 1, 1988 (emphasis added).

¶15. Under the language of M.R.E. 503 it could appear that the waiver of the medical privilege is to possibly be treated in different ways depending upon what type of suit is being tried. Under M.R.E. 503(d)(3), medical malpractice suits are addressed specifically and no reference is made to other personal injury claims. Next, under M.R.E. 503(f), the claim of medical malpractice is not specifically addressed, and the rule speaks in terms of waivers being limited to the extent that the suit places a plaintiff's physical, emotional or mental condition in issue. However, the comment clearly says that even though the primary impact of subsection (f) will be in personal injury actions, that the exception by its terms is "not so limited." M.R.E. 503(f) Comment. Accordingly, the scope of the waiver for the medical privilege is not to be treated any differently in a medical malpractice case than it is in any other typical personal injury case; i.e. it is limited to *relevant* medical history in medical malpractice cases as well.

¶16. M.R.E. 503(e) and Miss. Code Ann. §13-1-21(4) both refer to *relevant* information although admittedly M.R.E. 503(d)(3) does not. However, based upon common sense of fair play and equal justice, we find that the medical information which is discoverable because of the waiver of the privilege is limited to all *relevant* medical history. Such medical history can concern either the negligence on behalf of the doctor or the injuries by a third person that have been placed in issue by the plaintiff in either a medical malpractice or garden variety personal injury suit.

¶17. Otherwise, an open-ended total waiver would or might allow the defendant to possess personal irrelevant information which should still be privileged since it would have no bearing upon the outcome of the case as it would not concern any injury placed in issue by the complaint and would likewise be inadmissible at trial on relevancy grounds. On the flip side of the coin, to allow the plaintiff to stand behind the privilege regarding information possessed by the alleged tortfeasor physician or other physicians would allow a plaintiff to possibly be compensated unjustly when the real cause of the injury might have been a preexisting injury which the jury would not know about because of the privilege. However, our intent is that such problems will not result from this interpretation and that the privilege will remain protected.

¶18. In sum, the Court finds the following regarding the scope of M.R.E. 503 and the applicability of Miss. Code Ann. §13-1-21. If a suit is filed on either medical malpractice grounds or other grounds placing the plaintiff's condition in issue, then the plaintiff's medical privilege regarding any relevant medical information from whatever source is automatically waived for the purposes of and only to the extent to which the plaintiff's condition is put in issue. The determination of the relevancy of medical information which cannot be worked out on amicable terms between opposing counsel, is to be resolved by a judicial relevancy hearing. However, under no circumstances should a court order or require a person to release medical information *unconditionally* as in this case. Such disregard for a patient's right to confidentiality will not be tolerated by this Court.

### (2) ARE EX PARTE CONTACTS WITH MEDICAL PROVIDERS PERMISSIBLE UNDER THE RULES OF DISCOVERY IN THE MISSISSIPPI RULES OF CIVIL PROCEDURE?

¶19. There is a national split of authority on the propriety of ex parte contacts and, at first glance, this would appear to be a civil procedure question. However, the rules of civil procedure send us back to the rules of

evidence to determine what is discoverable when the information sought falls under a privilege. M.R.C.P. 26(b)(1) tells us that the *scope* of discovery allows a party to discover any matter *not privileged* which is *relevant* to the issues raised by the claims or defenses.

¶20. The methods of discovery are set forth in M.R.C.P. 26(a) which states that a party "may" obtain discovery in seven methods. Ex parte contacts are neither excluded nor included under the seven methods. This could mean that an ex parte contact is not considered a formal discovery mechanism and thus not governed by the rules set forth for formal discovery mechanisms making the use of ex parte contacts permissible.[(2)] However, the silence in the rule on ex parte contacts could also mean that such a practice is unacceptable.[(3)]

¶21. It is understood that evidence does not have to be admissible to be discoverable, only relevant. Likewise, it is also understood that the objection that evidence sought would ultimately be inadmissible does not prohibit its discoverability so long as it is "reasonably calculated to lead to the discovery of admissible evidence." M.R.C.P. 26(b)(1). Naturally, this opens up the question of *who* determines *when* and *what* information is relevant for the particular purpose of the suit and the *manner* by which it is to be obtained?

¶22. We urge that parties mutually agree in this area whenever possible. If the parties can not come to terms on what information is relevant and disclosable giving the plaintiff an opportunity to confer with the physician prior to disclosure, then it is to be handled by relevancy hearings. This allows the plaintiff the needed protection of confidentiality which the legislature and the Court intended. But the defendants allege that requiring a court order from a relevancy hearing to obtain or know what can be obtained would add unnecessary expense and delay to the litigation. However, the need for patient confidentiality outweighs that of judicial expeditiousness. A patient's privilege of medical confidentiality is of paramount importance and must be afforded protection.

¶23. The defendant provides examples of other courts holding that the use of ex parte contacts is permissible and orders plaintiffs to execute the requisite waiver forms. ***See Doe v. Eli Lilly & Co.,*** 99 F.R.D. 126 (D.D.C. 1983). ***Eli Lilly & Co.*** ordered the plaintiff to execute an authorization form allowing his treating physicians, at their option, to engage in informal *ex parte* interviews with defense counsel because, absent the existence of a privilege, which the court found to be waived by the filing of the complaint, a party cannot restrict access to witnesses. We do not find the reasoning of ***Eli Lilly & Co.*** persuasive or reasonable.[(4)]

¶24. Another significant argument about ex parte interviews revolves around who is the holder of the privilege. M.R.E. 503(c) makes the patient the holder of the privilege. Therefore, a patient is deprived of this right when a physician is allowed to speak ex parte because the physician then decides how, when and what information is to be waived when he is not the holder of said privilege. *See **Wisconsin ex rel. Klieger v. Alby,*** 373 N.W.2d 57, 61 (1985)("If the court orders private conferences outside the scope of discovery, the patient loses control of the privilege, a result the statutes clearly do not contemplate."[(5)] ;***Jaap v. District Court,*** 623 P.2d 1389 (Mont.1981). Our rules of evidence clearly give the privilege to the patient and say further that the physician can claim the privilege, but only on behalf of the patient. The Comment to M.R.E. 503(c) also states that *only* the patient can waive the privilege. Therefore, to allow the physician to speak ex parte would be inconsistent with our rules. Accordingly, we find that the rules only permit the patient to waive the privilege and that to allow the treating physician to do so would deprive the patient of that very right.

¶25. More recent decisions, and particularly the only one in our Fifth Circuit treating it as a case of first impression, while recognizing the national split of authority on the issue, have held to the contrary and criticized *Eli Lilly & Co.. Horner v. Rowan,* 153 F.R.D. 597, 601-602 (Texas 1994) held that:

> the appropriate rule should prohibit ex parte interviews between defense counsel and plaintiff's treating physicians unless, with advance notice thereof, plaintiff specifically and unconditionally authorizes same; this is the only way in which the physician/patient privilege can be held inviolate. ... Therefore, while there is conflicting authority, in order to preserve the integrity of the physician/patient privilege, a defendant must be limited to the formal methods of discovery enumerated by the Rules of Civil Procedure, absent the plaintiff's express consent to counsel's ex parte contact with his treating physicians. ... Moreover, while Rule 509 [Texas' medical privilege] removes the privilege in regard to information concerning any medical condition in issue, information not related to that condition remains privileged. The decision to waive the privilege as to unrelated matters belongs to the patient; yet, if ex parte interviews are permitted, it would be left to the physician to determine what information is subject to disclosure and what remains privileged. The doctor is not only unskilled in making that determination, any error in judgment could, in addition, expose the physician to liability arising from an improper disclosure .... Requiring the contact with treating physicians to occur only in the context of formal discovery relieves the physician of this responsibility, protects him from inadvertent liability and protects any information still privileged by assuring plaintiff's representative will be in a position to timely assert the privilege where appropriate. Formal discovery, on the record, with notice and an opportunity to other parties to be present and to participate in the proceeding, is simply the fairest and most satisfactory means of obtaining discovery from a treating physician. Besides, this rule regulates only how defense counsel may obtain information from a treating physician, not the substance of what is discoverable.

*Id.* at 601-02; (citations omitted) (emphasis added).

¶26. The rationale and holding of *Horner v. Rowan* is the most sound and reasonable solution for handling the disclosure of relevant privileged medical information. Accordingly, we adopt the rationale of *Horner v. Rowan* for use in Mississippi state courts regarding the waiver and treatment of medical privileges where the plaintiff's physical, mental or emotional condition has been placed in issue.

¶27. Dr. Flynt takes the position that ex parte contacts are appropriate anytime and certainly when a plaintiff puts his condition at issue. He alleges that to treat a doctor differently than other fact witnesses goes against our holding in *Scafidel v. Crawford,* 486 So. 2d 370 (Miss. 1986). *Scafidel* simply held that it was not error to allow a testifying physician to testify as both a fact and expert witness. *Id.* at 372. Therefore, Dr. Flynt maintains that it is impermissible to prevent a doctor from making ex parte contacts as a fact witness when a physician can be a fact witness, and other fact witnesses are permitted to make ex parte contacts. We find this argument without merit.

¶28. The language in M.R.E. 503(f) states specifically that ex parte contacts by the opposing party are not authorized by the exception addressing the privilege in the context of other personal injury suits. Therefore, the defendants pose the question of whether this also applies to M.R.E. 503(d)(3) cases, i.e. medical malpractice cases?

¶29. According to the Comment, M.R.E. 503(f) is not limited to other personal injury actions. The defendants allege that the last sentence of M.R.E. 503(f) simply says that ex parte contacts are not

authorized, which does not necessarily mean that they are prohibited. The logical conclusion is that ex parte contacts by the opposing party are prohibited in both medical malpractice and other personal injury cases as well, which limits the gathering of the medical information to the presently available formal discovery mechanisms absent express patient consent *once* the lawsuit has begun.

¶30. The defendants have raised the concern as to how rules of evidence can be applied outside of a legal proceeding. Also, the rules are for the purpose of governing the admissibility of evidence, so what can allow them to control someone's actions in a nonlegal setting ex parte, i.e. ex parte contacts?

¶31. The evidentiary prohibition against ex parte contacts by the opposing party presumably can not prevent a person, i.e. a physician of the plaintiff, from physically speaking ex parte. However, the rule against such will be used to prevent the admissibility of any evidence gathered ex parte just as in **Horner v. Rowan** and **Karsten v. McCray**. This produces the result desired by the amended rule.

¶32. Our rules of evidence and rules of civil procedure are only applicable during a court proceeding which includes discovery. M.R.E. 1101. The question of ex parte contacts and the waiver of a privilege *only* come into play during a court proceeding. Therefore, our rules are not applicable and can neither allow nor prohibit a defendant from speaking ex parte with the plaintiff's physician. We simply note with caution that those who violate these rules do so at their own risk.

¶33. The procedure offered for obtaining medical information by the Mississippi Defense Lawyers Association, (hereinafter MDLA), in their Amicus Curiae brief on behalf of Dr. Flynt and other physicians, does not seek to permit unmonitored informal ex parte interviews. Rather, the MDLA suggests the circuit court issue an order requiring the plaintiff to execute a medical waiver form authorizing the release of medical information as to the physical, mental and/or emotional condition placed in issue by the lawsuit upon the filing of any type of personal injury suit. But, MDLA concedes and suggests that it would be proper and tolerable to require the defendant to give the plaintiff notice of any interviews it anticipated conducting *prior* to doing so to allow the plaintiff to either be present or speak with the physician to assure that he does not breach a privilege. The only significant difference between the MDLA approach and our holding today is that if the patient does not gives his consent to his physician to speak ex parte, that the physician will do so at his own risk and the information divulged will be inadmissible. Under the MDLA approach, the patient would only be required to be given notice, not the right to prevent the disclosure and require the formal discovery processes to be used instead. We find that it is necessary for the patient to be given notice and have the right to prevent any ex parte contacts. It is not the substance of the information that is being regulated, it is the method of how it is obtained. *See, Horner*, at 601.

¶34. In the event a physician speaks, then the only *rules* applicable at that point in the absence of a court proceeding are his professional ethical codes of conduct concerning confidentiality. Avenues of redress are available in the event of the breach of such rules, but cases have shown that such deterrents may not be sufficient in the all important area of patient confidentiality.

¶35. In the event a waiver occurs, it is only for *relevant* information in a court proceeding, which includes all hearings, trials, and discovery measures. In the event irrelevant privileged information is disclosed, and an attempt is subsequently made to use the information in a court proceeding, our rules of evidence and procedure will prohibit such use.

¶36. The waiver is not in any circumstance to be *unconditional* to allow the disclosure of irrelevant

privileged information. The waiver should always be limited to the disclosure of *relevant* information to the injury placed in issue. Privileged, irrelevant information should always be protected from use.

¶37. Vivian contends that to allow a physician to unconditionally disclose medical information about her will be a civil violation for invasion of privacy. Dr. Flynt maintains that to prevent him from divulging medical information because of a protected privilege would amount to a violation of his due process rights, his right to effective representation of counsel and a fair trial. Dr. Flynt further contends that his rights to due process etc., are specifically enumerated rights under the Mississippi and U.S. Constitutions which take precedence over the right to privacy which is not specifically stated in the constitutions.

¶38. The Court bases its decision today on statutory interpretation grounds making it unnecessary to address the constitutional concerns. As this Court stated in ***Kron v. Van Cleave***, 339 So. 2d 559, 563, (Miss. 1976), "courts will not decide a constitutional question unless it is necessary to do so in order to decide the case." This claim is decided upon state statutory and evidentiary law grounds making it unnecessary to discuss the constitutionality. Thus, this issue is not addressed as it is unnecessary to dispose of this case.

¶39. One additional argument submitted by the defendant is that to allow the plaintiff to be present whenever medical information is sought by the defendant about the plaintiff would infringe upon the attorney work product privilege and deny the defendant his right to effective representation. ***Hickman v. Taylor***, 329 U.S. 495 (1946); M.R.C.P. 26(b)(3). The attorney work product privilege would not necessarily be violated under these circumstances. Our present discovery mechanisms allow counsel to be present during any other deposition. Therefore, there is no difference in the issues in this case rendering this argument without merit.

## CONCLUSION

¶40. The rules, as amended, were intended to be applied as follows. When a personal injury suit is pending, the medical privilege with regard to *relevant* information is automatically waived, making it unnecessary to have an automatic court order issued, to permit both parties equal access to all of the relevant information needed to get to the truth. The manner by which the relevant information is to be acquired is limited to either a voluntary consensual disclosure by the patient who is the holder of the privilege or the formal discovery process to prevent any breach of confidentiality. We hold that evidence obtained from ex parte contacts, without prior patient consent, by the opposing party which is subsequently used during a legal proceeding, is inadmissable. This procedure allows the defendant access to the needed information, and does not improperly allow the plaintiff to be protected behind the shield of the privilege. In sum, the relevant information is disclosed and the plaintiff's confidentiality is protected.

¶41. **REVERSED AND REMANDED**.

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, McRAE, SMITH AND MILLS, JJ., CONCUR. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, J.**

**BANKS, JUSTICE, CONCURRING:**

¶42. I concur with the result reached by the majority and all that is said except with one particular. While our rules of evidence do not sanction *ex parte* contact in my view neither do they prohibit them. The majority's desire to discourage such contact, while salutary, finds no support in our rules of evidence. Those rules, as noted by the majority, govern proceedings in court but have no application otherwise. One who obtains information not otherwise privileged without recourse to the processes of court should not for, solely that reason, have the evidence barred. In my view, duties on the part of physicians and other professionals to hold client communications in confidence which emanate from professional standards and elsewhere are sufficient to protect the public. We need not erect an evidentiary barrier for that purpose. The risk of liability for unsanctioned disclosure is sufficient to that task.

**PITTMAN, J., JOINS THIS OPINION.**

1. The Advisory Committee Historical Note appears in the 1995 Mississippi Rules of Court.

2. *See, e.g.,* ***Trans-World Investments v. Drobny***, 554 P.2d 1148 (Alaska 1972); ***Green v. Bloodsworth***, 501 A.2d 1257 (Del.Super.Ct.1985); ***Coralluzzo v. Fass***, 450 So. 2d 858 (Fla.1984), but recently superseded by statute prohibiting ex parte contacts as stated in ***Acosta v. Richter***, 1996 WL 15522 (Fla. Jan. 18, 1996); ***Samms v. Colorado***, 908 P.2d 520 (Colo. 1996); ***Steinberg v. Jensen***, 534 N.W.2d 361 (Wis. 1995).

3. *See, e.g.,* ***Weaver v. Mann***, 90 F.R.D. 443 (D.N.D.1981); ***Acosta v. Richter***, 1996 WL 15522 (Fla. Jan. 18, 1996)*; **Jaap v. District Court***, 623 P.2d 1389 (Mont.1981); ***Johnson v. District Court***, 738 P.2d 151 (Okl.1987).

4. The real threat of ex parte contacts is best understood in light of ***Karsten v. McCray*****,** 509 N.E.2d 1376, 157 Ill.App.3d 1, appeal denied, 117 Ill.2d 544, 517 N.E.2d 1086 (1987); (wherein Illinois held that a plaintiff's treating physicians could not be interviewed ex parte and that the fruits of the unauthorized interviews would be barred from being introduced). *See, also* Philip H. Corboy, EX PARTE CONTACTS BETWEEN PLAINTIFF'S PHYSICIAN AND DEFENSE ATTORNEYS: PROTECTING THE PATIENT-LITIGANT'S RIGHT TO A FAIR TRIAL, 21 Loy. U. Chi. L.J. 1001 (1990).

5. Notably ***Klieger*** has been overruled by ***Steinberg v. Jensen***, 534 N.W.2d 361 (Wisc. 1995) because of an expansive subsequent interpretation the Wisconsin Court of Appeals had been giving ***Klieger***. However, ***Steinberg*** reaffirms the ***Klieger*** position that the patient is the holder of the privilege. ***Steinberg***

additionally set forth a similar position taken by the Court in this case by recognizing that ex parte contacts are not absolutely prohibited as rules of evidence do not control matters other than those during judicial proceedings, and that the plaintiff must be given prior notice of the intended contact by opposing counsel, and finally, that the disclosure of prejudicial confidential information by a plaintiff's treating physician can be inadmissible. *Steinberg v. Jensen*, 534 N.W.2d 361, 371-373 (Wisc. 1995).