# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-IA-00133-SCT

***ESTATE OF KATHERINE M. LYONS,***
***DECEASED: ANTHONY LOBRED***

*v.*

***LARRY LYONS***

| | |
|---|---|
| DATE OF JUDGMENT: | 01/27/2016 |
| TRIAL JUDGE: | HON. VICKI R. BARNES |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DAVID M. SESSUMS |
| ATTORNEY FOR APPELLEE: | HENRY DEAN ANDREWS, JR. |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 04/06/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., KITCHENS AND COLEMAN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     The instant interlocutory appeal arises from a will contest between the testator's

brother, Larry Lyons, and her nephew, Anthony Lobred.  Larry filed a motion to strike the

deposition testimony of Dr. Lara Clement, a treating physician of the testator, due to

Lobred's counsel's alleged *ex parte* communication with Dr. Clement prior to her deposition.

The trial court ordered that any testimony of Dr. Clement that was not discernable from the

testator's medical records would be inadmissible at trial.  Lobred sought permission to file

an interlocutory appeal and the Court granted Lobred's petition.  We hold that the

communication between Dr. Clement and Lobred's attorney was acceptable *ex parte* communication; accordingly, we reverse and remand.

## FACTUAL BACKGROUND

¶2.    On September 23, 2005, the testator, Katherine M. Lyons, executed a document purporting to be her last will and testament ("2005 will"). The 2005 will designated her nephew, Lobred, as executor and provided that all of Katherine's real and personal property would be devised to Lobred. The 2005 will also provided that, in the event Lobred predeceased Katherine, the sole beneficiary would be her nephew, Kenneth Lyons.

¶3.    On July 17, 2012, Katherine executed a document purporting to be her last will and testament ("2012 will"). The 2012 will designated Katherine's brother, Larry Lyons, as executor. The 2012 will provided that all of Katherine's real and personal property would be devised to Larry's son, Kenneth Lyons, while reserving a life estate for her residence for her brother, John Lyons. Upon John Lyons's death, the residence would revert to Kenneth Lyons.

¶4.    On March 29, 2014, Katherine passed away at the age of eighty-three. Katherine was not married and had no living children at the time of her death. Katherine's death certificate identified her immediate cause of death as cardiopulmonary arrest due to or as a consequence of Alzheimer's Disease. Larry disputed that Katherine died from complications associated with Alzheimer's Disease and further disputed that Katherine had suffered from Alzheimer's from 2012 until her death.

2

¶5.     On April 22, 2014, Lobred filed a petition to probate the 2005 will as muniment of title to real property in Warren County.  In the petition, Lobred claimed that Katherine had conveyed to him certain real property in Warren County and had reserved a life estate for herself.  Lobred claimed that because Katherine's personal estate did not exceed the sum of $10,000, no reason existed to have an administration of the estate or to appoint an executor. The trial court entered an order probating the 2005 will as muniment of title to real property in Warren County.  On July 18, 2014, Larry filed a petition to probate the 2012 will in common form.  The trial court entered an order admitting the 2012 will to probate and appointing Larry as executor.

¶6.     The trial court consolidated the two separate cases.  On November 4, 2014, Lobred filed a petition contesting the validity of the 2012 will.  Lobred argued that Katherine had lacked testamentary capacity at the time she had executed the 2012 will.  Lobred also argued that the will was invalid because it was the product of undue influence from an individual or individuals having a fiduciary relationship with Katherine.

¶7.     On November 6, 2014, Larry filed a petition contesting the validity of the 2005 will as muniment of title to real property.  Larry argued that the 2012 will revoked all wills and codicils previously made.  Larry requested that the trial court declare the 2005 will void as a muniment of title.  Larry filed a response to Lobred's petition contesting the 2012 will. Larry disputed Lobred's claim that Katherine had lacked testamentary capacity at the time she had executed the 2012 will and further disputed that the 2012 will was a product of undue influence.

3

¶8.    During discovery, Lobred served Dr. Clement with a subpoena *duces tecum* requesting Katherine's medical records.  Katherine's medical records were provided to both Larry and Lobred.  Dr. Clement, a family medicine physician, saw Katherine as a patient on fourteen occasions from 2001 to 2006.  Dr. Clement saw Katherine as a patient on five occasions from January 31, 2011, to May 17, 2012.  Dr. Clement last saw Katherine as a patient on May 17, 2012.  On November 6, 2015, Lobred filed a notice of deposition scheduling Dr. Clement's deposition to be held at David M. Sessums's law office on December 10, 2015.

¶9.    On December 10, 2015, Larry's counsel, Dean Andrews Jr., arrived at Sessums's office and waited in the deposition room.  Lobred's counsel, Sessums, entered the room with Dr. Clement.  Andrews asked Sessums if he had been discussing Katherine's medical records with Dr. Clement; Sessums replied affirmatively.

¶10.   Dr. Clement's deposition is not in the record, but the substance of Dr. Clement's deposition testimony is not in dispute.  According to Lobred's petition for permission to appeal, Dr. Clement testified that Katherine had been competent to execute a valid will in 2005, but had been incompetent to execute a power of attorney in favor of Larry on May 8, 2012, and also incompetent to execute a valid will on July 17, 2012.  Larry claimed that Dr. Clement testified that she had spoken with Sessums in preparation for her deposition.  Larry also claimed that Dr. Clement testified that no one had authorized her to speak with anyone about Katherine's medical records and that she was familiar with privacy laws.

¶11.   On January 8, 2015, Larry filed a motion to strike the testimony of Dr. Clement.  Larry argued that Dr. Clement's testimony should be excluded due to unauthorized *ex parte*

4

communication between Dr. Clement and Lobred's counsel. Larry sought to strike all of Dr. Clement's testimony and did not limit the motion to specific testimony. Larry also claimed he had discovered that Sessums's law firm had represented Dr. Clement in an unrelated medical malpractice case. Larry argued that the firm's representation or former representation of Dr. Clement "add[ed] to the inappropriateness of the *ex parte* communication."

¶12. Lobred filed a response to Larry's motion to strike. Lobred admitted to speaking with Dr. Clement outside the presence of Larry's counsel and without his authorization. Specifically, Lobred admitted:

> It is admitted that Dr. Lara Clement was the treating physician of Katherine M. Lyons and that David M. Sessums noticed the deposition of Dr. Lara Clement and conducted such deposition on December 10, 2015. It is further specifically admitted that David M. Sessums personally and in great detail spoke with Dr. Lara Clement prior to the deposition regarding the condition of Katherine M. Lyons, in detail, all without any "authorization" from Larry Lyons, the person that took advantage of Katherine M. Lyons by exercising undue influence over her at a time when Katherine M. Lyons lacked the mental capacity to execute a valid last will and testament.

¶13. Lobred argued that Larry's attempt to strike the testimony of Dr. Clement was an "egregious attempt to hide his own wrongful conduct in [the] matter." Lobred did not contest Larry's allegation that Sessums's firm represents or represented Dr. Clement. On January 20, 2016, the trial court held a hearing on Larry's motion to strike. The trial court entered an order with the following findings:

> The parties agreed that there was *ex parte* communications between [Lobred's] attorney and Dr. Lara Clement prior to the commencement of Dr. Lara Clement's deposition. [Lobred] did not refute that his attorney's law firm represents or represented Dr. Lara Clement. The parties have acknowledged

5

that the medical privilege is not an issue as the medical records of Katherine M. Lyons, the decedent, have been provided to both parties.

¶14. The trial court ordered that "any testimony of Dr. Lara Clement that is not discernible from Katherine M. Lyons'[s] medical records is hereby inadmissible."

¶15. Larry filed a motion for reconsideration and clarification. Lobred also filed a motion for reconsideration and a response to Larry's motion to reconsider. On January 27, 2016, the trial court entered a "judgment" on the motions for reconsideration and clarification. The trial court denied both motions for reconsideration. However, the trial court granted Larry's motion for the trial court "to clarify its [o]rder as to the parameters of any admissible testimony of Dr. Clement[.]" The trial court directed the parties to schedule a hearing for the parties to provide "sufficient details to clarify its order regarding Dr. Lara Clement's admissible testimony."

¶16. The hearing was never scheduled and did not occur. Instead, on January 29, 2016, Lobred filed a petition for permission to appeal under Rule 5 of the Mississippi Rules of Appellate Procedure. The Court ordered Larry to file a response "addressing whether the rule prohibiting *ex parte* communication with a treating physician applies in an estate matter." Larry filed a response in compliance with the Court's order. On February 17, 2016, the Court granted Lobred's petition for permission to appeal.

## ANALYSIS

**Whether the trial court erred by ordering that any testimony of the testator's treating physician that was not discernable from the testator's medical records was inadmissible due to *ex parte* communication between counsel for one party in a will contest and the treating physician.**

6

¶17. Although the facts surrounding Katherine's testamentary capacity and Larry's alleged undue influence are hotly disputed, the facts pertinent to the narrow issue before the Court on interlocutory appeal are not in dispute. It is undisputed that Lobred's counsel communicated with Dr. Clement regarding Katherine's medical condition prior to Dr. Clement's deposition. The specific issue before the Court today is whether the testimony of the testator's treating physician should be excluded based on contact between the treating physician and a party without the opposing party's consent in a will contest wherein both parties are personal representatives of the deceased.

¶18. A panel of the Court ordered Larry to file a response to Lobred's petition for permission to appeal addressing "whether the rule prohibiting *ex parte* communication with a treating physician applies in an estate matter." The Court has held that the rule prohibiting *ex parte* communications under Mississippi Rule of Evidence 503(f) applies in the context of personal injury and medical malpractice cases. *Scott v. Flynt*, 704 So. 2d 998, 1000-01 (Miss. 1996). The comment to Rule 503 states that the "primary impact of subdivision (f) will be in personal injury actions, although the exception by its terms is not so limited." According to the comment, the *ex parte* rule contained in Rule 503(f) could apply in estate matters. Thus, the question initially framed by a panel of the Court may be answered in the affirmative. However, the inquiry does not end here because the Court has yet to address how or if the rule prohibiting *ex parte* communications would apply in the context of a will contest where both parties can claim to be personal representatives of the deceased.

7

¶19.	At the time of the trial court's order on Larry's motion to strike Dr. Clement's

testimony, Rule 503(f) provided:

>	(f) Any party to an action or proceeding subject to these rules who by his or
>	her pleadings places in issue any aspect of his or her physical, mental or
>	emotional condition thereby and to that extent only waives the privilege
>	otherwise recognized by this rule. This exception does not authorize *ex parte*
>	contact by the opposing party.

Miss. R. Evid. 503(f) (2015). Amended Rule 503(f)[1] now provides:

>	(f) Waiver by Pleadings; *Ex Parte* Contact. A party whose pleadings place in
>	issue any aspect of that party's physical, mental, or emotional condition
>	thereby--and to that extent only--waives the privilege. The exception in this
>	subdivision (f) does not authorize *ex parte* contact by an opposing party.

Miss. R. Evid. 503(f) (2016).

¶20.	In *Scott*, the trial court ordered the plaintiff in a medical-malpractice case to execute

an unconditional medical waiver and permit *ex parte* conferences by the defendants with any

medical provider of the plaintiff. *Scott*, 704 So. 2d at 999. On interlocutory appeal from the

trial court's order, the *Scott* Court addressed "two interrelated questions of law[,]" which

were framed as "(1) the scope of the medical waiver as contemplated by Mississippi Rule of

Evidence 503 and (2) whether or not *ex parte* contacts with medical providers are permissible

under the rules of discovery in the Mississippi Rules of Civil Procedure." *Id.* at 1000.

---

[1]	Mississippi Rule of Evidence 503 has been amended since the Court granted
interlocutory appeal. The amendment became effective July 1, 2016, just before the parties
filed their briefs with the Court. The comment to Rule 503 states: "The language of Rule 503
has been amended as part of the general restyling of the Evidence Rules to make them more
easily understood and to make style and terminology consistent throughout the rules. . . .
These changes are intended to be stylistic only. There is no intent to change any result in any
ruling on evidence admissibility." The amendments do not have any impact on the case *sub
judice*.

8

¶21. The ***Scott*** Court recognized that a "significant argument about *ex parte* interviews revolves around who is the holder of the privilege." ***Id.*** at 1004. Before answering the question of how or if the *ex parte* rule would apply in the context of a will contest, the Court must determine who holds the medical privilege of the testator in a will contest. One of the two permitted methods stated by the ***Scott*** Court for obtaining relevant medical information *ex parte* from a treating physician is through "voluntary consensual disclosure by the patient who is the holder of the privilege." ***Id***. at 1007. Here, the patient is deceased, so consent would have to be obtained from whoever holds the privilege of the deceased. We hold that in the instant case both parties were personal representatives of the deceased and, therefore, under either the rule or the statute, no prohibited *ex parte* contact occurred. Because the result is the same whether we employ the rule or the statute, we do not today address any argument or disseminate any holding addressing which governs over the other.

¶22. Mississippi Code Section 13-1-21(1) provides:

> (1) All communications made to a physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor by a patient under his charge or by one seeking professional advice are hereby declared to be privileged, and such party shall not be required to disclose the same in any legal proceeding except at the instance of the patient or, in case of the death of the patient, at the instance of his personal representative or legal heirs in case there be no personal representative, *or except, if the validity of the will of the decedent is in question, at the instance of the personal representative or any of the legal heirs or any contestant or proponent of the will*.

(Emphasis added.)

¶23. Under Section 13-1-21(1), "the personal representative or any of the legal heirs or any contestant or proponent of the will" may waive the medical privilege. However, Rule 503(c)

9

identifies the "personal representative" only as an individual who may waive the general medical privilege of a deceased patient. Rule 503(c)[2] states:

> (c) Who May Claim the Privilege. The privilege may be claimed by the patient, his guardian or conservator, or the personal representative of a deceased patient. The person who was the physician or psychotherapist at the time of the communication is presumed to have the authority to claim the privilege but only on behalf of the patient.

Miss. R. Evid. 503(c).

¶24. Under Rule 503(c), a deceased patient's "personal representative" may claim the medical privilege. Black's Law Dictionary defines a "personal representative" as: "Someone who manages the legal affairs of another because of incapacity or death, such as the executor of an estate. Technically, an executor is a personal representative named in a will, while an administrator is a personal representative not named in a will." *Personal representative*, Black's Law Dictionary (10th ed. 2014).

¶25. Katherine unequivocally stated in her 2005 will: "I hereby nominate, constitute, and appoint my nephew, Anthony Lobred, Executor of this my Last Will and Testament and I authorize and empower my said Executor to do any and all things which in his opinion are necessary to complete the administration and settlement of my estate, including full right,

---

[2] Rule 503(c) has been amended for stylistic purposes:

(c) Who may Claim the Privilege.
    (1) The privilege may be claimed by:
        (A) the patient;
        (B) the patient's guardian or conservator; or
        (C) a deceased patient's personal representative.
    (2) The physician or psychotherapist at the time of the communication is presumed to have authority to claim the privilege, but only on the patient's behalf.

power and authority, without the necessity of obtaining an order from any Court and upon such terms and conditions as my said Executor shall deem best for the settlement of my estate, to bargain, sell at public or private sale[,] convey, transfer, deed, mortgage, lease, exchange, pledge, manage and deal with any and all property belonging to my estate." Here, Lobred carried out his duty as Katherine's personal representative by probating her 2005 will as muniment of title. Katherine's 2012 will contained a similar provision designating Larry as executor. As a result, both Lobred and Larry hold the general medical privilege as Katherine's "personal representative" under the plain language of Rule 503(b).

¶26. Lobred argues that there is no conflict because Rule 503 is silent regarding will contests, whereas Section 13-1-21(1) specifically addresses the medical privilege in the context of will contests and provides rights not otherwise provided for by the rules of evidence. While we agree with the result urged by Lobred, we disagree that the result stems only from the combination of the statute and the silence of the rule. Rather, because Rule 503 provides that the personal representative may claim the privilege on behalf of a deceased person, and in **Scott** we held that the party who may claim the privilege may waive the privilege, it is not the silence of Rule 503 but its content that undergirds our holding.

¶27. Section 13-1-21(1), on the other hand, specifically addresses waiver of the medical privilege in the context of a will contest. Under both Rule 503 and Section 13-1-21(1), the medical privilege belongs to both Lyons and Lobred. Under Section 13-1-21(1), the medical privilege may be waived by the personal representative, any legal heir, or any proponent or contestant of a will. Thus, Section 13-1-21(1) authorizes Lobred to waive the entire medical

11

privilege as a personal representative and contestant of the 2012 will. Because Rule 503(c) and Section 13-1-21(1) both authorize Lobred to waive the entire privilege, the *ex parte* rule of Rule 503(f) does not operate to bar his attorney from speaking alone with the physician witness.

## CONCLUSION

¶28.  Under either Rule 503(c) or Section 13-1-21(1), Lobred was authorized to waive Katherine's medical privilege. Lobred's counsel's communications with Dr. Clement were not prohibited when there was no privilege left for the *ex parte* rule to preserve. Because no prohibited *ex parte* contact occurred, we reverse the trial court's order and remand with instructions that Dr. Clement's testimony remains admissible.

¶29.  **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR.**