# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-00531-SCT

*IN THE MATTER OF THE LAST WILL AND
TESTAMENT OF MARY SAUNDERS WALLER:
BRENDA GORDON AND CRAIG GORDON*

*v.*

*SHERRY WALL, ADMINISTRATRIX C.T.A. OF
THE ESTATE OF MARY SAUNDERS*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/08/2017 |
| TRIAL JUDGE: | HON. GLENN ALDERSON |
| TRIAL COURT ATTORNEYS: | TARA BETH SCRUGGS |
| | MICHAEL N. WATTS |
| | GEOFFREY FELIX CALDERARO |
| | RONALD W. LEWIS |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | ROBERT QUENTIN WHITWELL, JR. |
| | DEREK HEATH-ESSEX MORETON |
| ATTORNEYS FOR APPELLEE: | MICHAEL N. WATTS |
| | R. BRADLEY BEST |
| | GEOFFREY FELIX CALDERARO |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 06/06/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., ISHEE AND GRIFFIS, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.    The Lafayette County Chancery Court set aside an *inter vivos* gift of about forty acres

fronting Highway 6 near Oxford.  The grantor was Mary Saunders Waller, a ninety-year-old

woman who was hard of hearing and legally blind; the grantees were Waller's daughter and

son-in-law, Brenda and Craig Gordon. The Gordons lived near Waller and had been her caretakers for many years. A conservator was appointed shortly before Waller's death, and she filed a petition in the probate action to set aside the deed to the Gordons. The Gordons admitted to a confidential relationship with Waller, and the chancellor found they were unable to rebut the attending presumption of undue influence. On appeal, the Gordons contend the chancery court erred by excluding the testimony of Waller's attorney and physicians because of ex parte contact by the Gordons' attorney.

¶2. With regard to the physicians, the Gordons failed to make an offer of proof. Since this Court has no way to know what the physicians would have said had they testified, we cannot find any error in the exclusion of their testimony. *See* M.R.E. 103. The trial court should not have excluded the attorney's testimony, because the ex parte contact rule does not apply to attorneys; but the Gordons conceded the point at trial. We cannot find an abuse of discretion in denying the Gordons' motion for a new trial based on arguments that could have, and should have, been raised at trial.

¶3. We affirm the chancery court's judgment.

**FACTS**

¶4. Mary Saunders Waller and her husband originally owned about 160 acres of land in Lafayette County, west of Oxford. The Wallers had four daughters, one of whom was Brenda Gordon. Over the years, Waller had sold or given away numerous small parcels to various family members, mostly so they could build houses. The Gordons bought a house

2

on family land that had been deeded to one of Brenda's sisters; the Gordons bought the house and the land from the sister. By the time of the events at issue, Waller had about 136 acres left. The Gordons would later contend the 39.25 acres deeded to Brenda Gordon was intended to be her one-fourth share of the original Waller family land.

¶5. At the time the deed was executed, Waller was ninety years of age. She lived by herself but required assistance with some day-to-day activities, including bathing. Brenda Gordon would usually help Waller bathe. Waller was legally blind and could not drive. She was also hard of hearing; even the Gordons acknowledge that one would have to "[speak] into her left ear and talk[] slowly" to be understood. And Waller had had three hip replacements and had difficulty walking. Brenda Gordon and one of her sisters had a joint (but not several) power of attorney for Waller.

¶6. For their part, the Gordons testified that Waller was mentally sound and knew what she was doing. On the other hand, Joyce Webb, one of Waller's other daughters, testified that Waller's "mental state had started declining" and described her as "dependent" and childlike.

¶7. The surveyor testified he was hired by the Gordons and only ever talked with them. His account directly contradicted the Gordons' testimony that Waller had at least spoken to him before the survey. The Gordons drove Waller to the attorney and were present when she executed the deed, but they did not bring the magnifying device she needed to read it. The Gordons also admitted they did not tell other family members about the transfer, though

3

apparently the family had not been consulted on prior occasions when Waller transferred land to other family members.

¶8. Waller also had cosigned on a $44,000 debt consolidation loan for the Gordons. She put up certificates of deposit and some of her land as collateral. The Gordons were often late making payments. The Gordons also never paid the surveyor for several jobs relating to Waller's land, including surveying the disputed parcel. But they did have money to travel frequently to go to football games. It was suggested that the land deeded to the Gordons was more valuable than the rest because it fronted Highway 6 near Oxford. And while it may have been a quarter of the original family land, it was closer to a third of the 136 acres that remained.

¶9. The deed transferring the 39.25 acres to the Gordons was executed on January 22, 2015. The conservatorship was opened on September 7, 2016, and Waller died on May 26, 2017.

¶10. The petition to set aside the deed went to trial on September 20, 2017. At the start of the hearing, the estate's attorney made an oral motion to exclude the testimony of Waller's physicians and attorney on the basis of ex parte contact by the Gordons' attorney. The chancellor granted the motion. Ultimately, the chancery court entered a final judgment setting aside the deed under Mississippi Rule of Civil Procedure 54(b).

## DISCUSSION

1. **Exclusion of Waller's Physicians**

4

¶11.   Based on Mississippi Rule of Evidence 503(f) and the line of cases originating with

***Scott v. Flynt***, 704 So. 2d 998 (Miss. 1996), the chancellor excluded the testimony of

Waller's physicians because the Gordons' attorney had engaged in ex parte communications

with them.  The Gordons contend this was error, but they failed to preserve the issue by

making an offer of proof as to the physician witnesses' testimony.  Mississippi Rule of

Evidence 103(a)(2) states in relevant part,

> (a) Preserving a Claim of Error.  A party may claim error in a ruling to . . .
> exclude evidence only if the error affects a substantial right of the party and[]
> . . . a party informs the court of its substance by an offer of proof, unless the
> substance was apparent from the context.

It may be "apparent from the context" that the physicians would have testified about Waller's

mental capacity and health, but this Court has no way to know what the witnesses would have

actually said, so it cannot find any error in the exclusion of their testimony.  *See* M.R.E. 103;

*see also **U. of Miss. Med. Ctr. v. Foster***, 107 So. 3d 149, 154-55 (Miss. 2013) ("[W]ithout

a proffer, [the trial judge] had no opportunity to correct the mistake (if there was one), and

we have no way to judge whether the opinions UMMC claims were excluded[] were

sufficiently important to require reversal.").

¶12.   We find the issue of the exclusion of the physicians' testimony barred.

### 2.      Exclusion of Waller's Attorney

¶13.   The ex parte contact rule established in ***Scott v. Flynt***, 704 So. 2d 998 (Miss. 1996),

has only ever been applied to physicians.  ***Scott*** was expressly limited to medical providers,

and it was predicated on Mississippi Rule of Evidence Rule 503(f), which by its own terms

5

addresses the privilege between patient and physician or psychotherapist. ***Scott***, 704 So. 2d at 1004-05. We are aware of no authority extending the rule to attorneys, and we will not do so now. But we find no reversible error here because this issue has also been waived.

¶14. After the objection was made at trial, the Gordons' attorney conceded that the ex parte contact rule *did* apply to attorneys; he said "I did not know that I needed to seek permission from Ms. Wall. That's on me." His argument was only that the estate's objection was untimely and that it was impossible for him to have made his case without speaking to the witnesses directly. The former point was unsupported by argument or authority, and the latter was immediately conceded when the chancellor pointed out that the Gordons could have requested permission from the estate or deposed the witnesses with the estate's counsel present.

¶15. The chancellor then excluded the testimony, and the Gordons tried the case without further complaint. The first time they presented any substantive argument against the exclusion of the attorney's testimony was in their post-trial motion under Mississippi Rule of Civil Procedure 59. It was also the first time the Gordons proffered the substance of the attorney's testimony, by attaching an affidavit to the Rule 59 motion.

¶16. It is axiomatic that "[t]he trial judge cannot be put in error on a matter which was not presented to him for decision." ***Brown v. Miss. Transp. Comm'n***, 749 So. 2d 948, 954 (Miss. 1999) (citing ***Cossitt v. Federated Guar. Mut. Ins. Co.***, 541 So. 2d 436, 446 (Miss. 1989)). The Gordons' arguments and proffer came too late for the chancery court to consider

the issue as a question of the admissibility of the evidence at trial. Thus, the issue is not whether the chancery court properly sustained the estate's objection to the attorney's testimony; if it is to be considered at all, the question is whether the chancellor erred in denying the Rule 59 motion to alter or amend the judgment or for a new trial.

¶17. "Under Rule 59, the trial judge has discretion to grant a new trial or to amend the judgment 'if convinced that a mistake of law or fact has been made, or that injustice would attend allowing the judgment to stand.'" *McNeese v. McNeese*, 119 So. 3d 264, 272 (Miss. 2013) (citation omitted). The chancery court is a court of equity, and its power to grant a new trial is very broad; so we hesitate to say the chancery court could not have granted this motion for a new trial if it had found it necessary in the interest of justice. *See, e.g.*, *Barriffe v. Estate of Nelson*, 153 So. 3d 613, 618 (Miss. 2014) ("[G]iven the important corrective role of new-trial motions, the discretion granted to the court is exceedingly broad." (internal quotation marks omitted) (quoting Jack H. Friedenthal, et al., *Civil Procedure* 592 (4th ed. 2005)). But we cannot hold the chancery court to error for denying a Rule 59 motion based on a party's failure to argue an issue at trial. "[A] motion to alter or amend the judgment under Rule 59(e) . . . 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003) (citation omitted).

¶18. The Gordons did contend they were ambushed with the objection, but even on appeal they have made no substantive argument regarding the timing of the objection, nor have they

cited authority suggesting it was untimely.  We cannot find an abuse of discretion in the denial of the Rule 59 motion.

¶19.   **AFFIRMED.**

   **RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR.**