# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-01351-SCT

*STATE OF MISSISSIPPI*

*v.*

*BAPTIST MEMORIAL HOSPITAL-GOLDEN TRIANGLE*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/13/96 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES T. KITCHENS, JR. |
| ATTORNEY FOR APPELLEE: | LAUREN J. HUTCHINS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 4/9/98 |
| MOTION FOR REHEARING FILED: | 5/15/98 |
| MANDATE ISSUED: | 4/12/99 |

**EN BANC.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. The State of Mississippi appeals unto this Court an order issued by the Circuit Court of Lowndes County quashing a grand jury subpoena duces tecum and a search warrant issued as part of a criminal investigation of a homicide. The documents requested information regarding medical records of patients of the Baptist Memorial Hospital-Golden Triangle (BMH-GT) who had been treated for lacerations during a specified time period. The hospital refused to comply with the subpoena duces tecum and the search warrant based on Miss. Code Ann. § 13-1-21, physician-patient privilege. After a hearing on the issue, the lower court quashed both the subpoena duces tecum and the search warrant based on the medical privilege found at Miss. Code Ann. § 13-1-21 and Miss. R. Evid. 503. The State of Mississippi appeals unto this Court raising the following issue:

> **I. WHETHER MISS. CODE ANN. § 13-1-21 AND MISS. R. EVID. 503 MUST BE READ *IN PARI MATERIA* WITH OTHER STATUTORY PROVISIONS WHICH CREATE EXCEPTIONS TO THE PHYSICIAN-PATIENT PRIVILEGE.**

¶2. The public interest in effective and efficient investigations into criminal activity outweighs the

privacy rights of the individuals who would be affected by the subpoena duces tecum and the search warrant. This case is reversed and remanded for further proceedings not inconsistent with this Court's opinion. These instructions are given so that criminal investigation will not be impeded and the privacy rights of the state's citizenry will not be unnecessarily infringed.

## STATEMENT OF THE FACTS

¶3. On July 8, 1996, the Columbus Police Department was called to the home of Mack Fowler. Upon arriving at Fowler's home, the police determined that Fowler had been stabbed to death. Police found a broken bottle with jagged edges at the crime scene that was covered with what appeared to the investigating officers to be blood. The Police were not sure if the perpetrator had used the bottle to strike the victim or if the victim had attempted to defend himself with the bottle against the attack of the perpetrator. Further, the Police did not know whether the blood came from the perpetrator or the victim. At the time of the lower court proceeding the tests determining the source of the blood on the bottle had not been returned from the Mississippi Crime Lab.

¶4. Notwithstanding the uncertainty of the source of the blood, the Police determined that the perpetrator had probably been injured during the commission of the crime and sought treatment at a hospital for those injuries. The Police secured a grand jury subpoena duces tecum on July 16, 1996, seeking

> ANY AND ALL MEDICAL RECORDS PERTAINING TO ANY PATIENTS ADMITTED OR TREATED BY BAPTIST MEMORIAL IN THE EMERGENCY ROOM OR PRIMARY CARE UNIT ON THE 8TH DAY OF JULY, 1996 THROUGH AND INCLUDING THE 9TH DAY OF JULY, 1996, INVOLVING ANY AND ALL CUTS AND LACERATIONS INFLICTED ON ANY PART OF THE PATIENTS' BODY.

This grand jury subpoena duces tecum was served upon the custodian of the records at the BMH-GT. However, the custodian refused to provide this information citing patient confidentiality.

¶5. Subsequently, on July 31, 1996, the Police sought and received a search warrant from a local magistrate. The search warrant was served on the BMH-GT and sought "[a] list of any and all patient's names and addresses who were treated for any cuts or lacerations to any part of their body by Baptist Memorial Hospital Golden Triangle, Primary Care or in the Emergency Room on July 8, 1996, though July 16, 1996." BMH-GT refused to comply with the search warrant based on patient privilege.

¶6. BMH-GT filed a petition to quash the grand jury subpoena duces tecum and the search warrant with the Circuit Court of Lowndes County. In the petition BMH-GT claimed the requested medical information was privileged from disclosure by Miss. Code Ann. § 13-1-21(1) and Miss. R. Evid. 503(b).

¶7. Following a hearing on BMH-GT's petition, the Circuit Court of Lowndes County entered an order quashing the grand jury subpoena duces tecum and the search warrant served upon BMH-GT on the basis that the medical records and medical information were, in fact, protected from disclosure by the medical privileges found at Miss. Code Ann. § 13-1-21 and Miss. R. Evid. 503. It is from this lower court order that the State of Mississippi has appealed unto this Court.

<u>**DISCUSSION OF THE ISSUE**</u>

**I. WHETHER MISS. CODE ANN. § 13-1-21 AND MISS. R. EVID. 503 MUST BE READ *IN PARI MATERIA* WITH OTHER STATUTORY PROVISIONS WHICH CREATE EXCEPTIONS TO THE PHYSICIAN-PATIENT PRIVILEGE.**

¶8. The lower court quashed the subpoena duces tecum and the search warrant after holding that the information sought in those documents was privileged from disclosure pursuant to Miss. Code Ann. § 13-1-21(1) and Miss. R. Evid. 503(b). Therefore, the circuit judge ruled as a matter of law that BMH-GT could not disclose the requested information to the police due to the confidentiality granted via the physician-patient privilege.

¶9. This Court employs a *de novo* standard of review when passing on questions of law. ***Starcher v. Byrne***, 687 So. 2d 737, 739 (Miss. 1997). The Court will only reverse if there has been an erroneous interpretation or application of the law. ***Mississippi Transp. Comm'n v. Fires***, 693 So. 2d 917, 920 (Miss. 1997). This Court has the final say regarding the interpretations of law. Therefore, this Court must look at the record *de novo* to determine if the lower court erred by quashing the subpoena duces tecum and the search warrant based on the physician-patient privilege found at Miss. Code Ann. § 13-1-21 and Miss. R. Evid. 503 without considering other statutory exceptions to the privilege.

¶10. The State of Mississippi recognizes the physician-patient privilege in two forms. The legislature enacted Miss. Code Ann. § 13-1-21(1), which provides

> [a]ll communications made to a physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor by a patient under his charge or by one seeking professional advice are hereby declared to be privileged, and such party shall not be required to disclose the same in any legal proceeding except at the instance of the patient or, in case of the death of the patient, at the instance of his personal representative or legal heirs in case there be no personal representative, or except, if the validity of the will of the decedent is in question, at the instance of the personal representative or any of the legal heirs or any contestant or proponent of the will.

Miss. Code Ann. § 13-1-21(1) (Supp. 1997).

¶11. Secondly, this Court created a version of the physician-patient privilege by enacting Miss. R. Evid. 503. Subsection (b) provides

> [a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing (A) knowledge derived by the physician or psychotherapist by virtue of his professional relationship with the patient, or (B) confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

Miss. R. Evid. 503(b).

¶12. The patient may claim the privilege, but the person who was the patient's physician is presumed to have authority to claim the privilege on behalf of the patient. Miss. R. Evid. 503(c). Although the case before this Court concerns an investigation into a homicide, the privilege may be applied to any legal proceeding. Miss. Code Ann. § 13-1-21(Supp. 1997). Mississippi recognizes and applies the physician-patient privilege in criminal proceedings. *Ashley v. State*, 423 So. 2d 1311, 1314 (Miss. 1982) (citing *Keeton v. State*, 175 Miss. 631, 167 So. 68 (1936)). The privilege clearly applies in this matter presently before the Court.

¶13. The subpoena duces tecum requested the medical records of patients who were admitted or treated at BMH-GT for cuts and lacerations inflicted on any part of the patients' body from July 8-9, 1996. The search warrant requested a list of the patients' names and addresses who were treated for any cuts or lacerations on any part of their body on July 8-16, 1996. BMH-GT argues that the subpoena duces tecum sought the production of the entire medical records of patients who were treated for lacerations or cuts. We disagree and find that the wording of the subpoena is specifically limited to the patients' medical records as they relate to any lacerations and cuts.

¶14. BMH-GT contends that the requested information was confidential and subject to protection. While this information was subject to the physician-patient privilege, there are several exceptions to the privilege. They are enumerated in the Mississippi Rules of Evidence and in the Mississippi Code. Miss. R. Evid. 503(d) provides the exceptions to the evidentiary physician-patient privilege.[1] The Mississippi Code provides at least two instances where disclosure of information overrides the privilege based on public policy concerns. The first is at Miss. Code Ann. § 43-21-353 (1993). There the legislature mandated that physicians, along with other listed professionals, should report any reasonable suspicion of child abuse to the Department of Human Services. Such reports should contain the names and addresses of the child and his parents or primary guardian, along with the nature of the child's injuries. Miss. Code Ann. § 43-21-353(1) (1993). Persons who make such a report are presumed to be acting in good faith and are provided with immunity from any liability, civil or criminal, that might be imposed. Miss. Code Ann. § 43-21-355 (1993).

¶15. There are other statutory exceptions to the physician-patient privilege. There is a statutory duty on health care professionals to report and disclose cases of communicable and other dangerous diseases. Miss. Code Ann. § 41-23-1 (1993). Health care officials are required to report to the Central Cancer Registry. Miss. Code Ann. §§ 41-91-5, -7, -11 (1993). Although the data is considered confidential, disclosure is to be made to those persons where it is necessary to carry out the intent of the chapter. There is also a provision for civil and criminal immunity to those who make the reports required in this chapter. Miss. Code Ann. § 41-91-13 (1993). Health care personnel are under a duty to report inflammation of the eyes of a new born. Miss. Code Ann. § 41-35-3 (1993). There is a duty upon those who have reasonable cause to believe a vulnerable adult has been abused, neglected, or exploited to report such information to the Department of Human Services. Miss. Code Ann. § 43-47-7 (1993).

¶16. The statutory exception to the physician-patient privilege found at Miss. Code Ann. § 45-9-31 is applicable to the case at bar. This particular code section mandates that a physician or any other health care official, including a veterinarian, disclose to the municipal police department or sheriff's office the treatment of any human being who the health care professional reasonably believes or

ought to know suffered a wound or injury as the result of a gunshot or knifing. Miss. Code Ann. § 45-9-31 (1993). The legislature provided immunity from civil liability to any such person who reports the statutorily required information. *Id.*

¶17. The State contends that the public policy behind these statutory exceptions to the physician-patient privilege is that there are certain instances where the need to protect society as a whole and certain vulnerable members of society outweigh an individual's need for confidentiality in his medical treatment and records. Further, the State claims that Miss. Code Ann. § 45-9-31 is an enactment driven by public policy. It allows law enforcement officials to be informed of certain injuries which often result from criminal activity or indicate a crime against a person. We agree with these arguments by the State.

¶18. The State concedes that the information requested in the subpoena duces tecum might be somewhat overly broad in its reach. However, the State argues that the names and addresses of the patients treated for cuts and lacerations requested in the search warrant was required to be disclosed to the police under Miss. Code Ann. § 45-9-31 (1993). The language in the statute states that any health care professional who has reason to believe or ought to know that a person sustained an injury caused by a knifing shall make a report immediately to the police. *Id.* The reasonable inference of the term knifing is any cut that appears to have resulted from an object used to make a cut or cause injury to a person. Knifing just happened to be the term used by the legislature to describe the type cut or injury. The information requested by the search warrant was the same as that required to be disclosed by BMH-GT under Miss. Code Ann. § 45-9-31. Therefore, BMH-GT wrongly objected to the search warrant.

¶19. This Court has recently disallowed physicians to speak ex parte with attorneys in a civil trial without the patient first waiving his privilege under Miss. R. Evid. 503. *Scott v. Flynt*, 704 So. 2d 998, 1004-05 (Miss. 1996). This Court stated that "a patient is deprived of this right when a physician is allowed to speak ex parte because the physician then decides how, when and what information is to be waived when he is not the holder of said privilege." *Id.* at 1004. The Court reiterated that only "the patient [could] waive the privilege and. . .to allow the treating physician to do so would deprive the patient of that very right." *Id.* at 1005.

¶20. The case presently before this Court is distinguishable from *Scott v. Flynt*. First, the Court reasoned in *Scott*, that allowing the physician to make a determination as to what information would be disclosed could expose him to potential liability from an improper disclosure. *Id.* Here the question of liability is answered by the statute requiring disclosure of the hospital. Persons who disclose or report persons who are treated for a wound or injury resulting from a possible knifing are immune from civil liability. Miss. Code Ann. § 45-9-31 (1993). The potential for civil liability on the part of BMH-GT for disclosure of the persons treated for lacerations or cuts pursuant to a request by a search warrant is a non-factor. There can be no liability where immunity has been statutorily provided by the legislature.

¶21. Second, the case before the Court involves a homicide investigation. Where there is an investigation into a serious and/or dangerous felony, public policy must override the rights of an individual. The privilege is to encourage the full disclosure by patients of their symptoms without fear of public disclosure. *State v. Antill*, 197 N.E.2d 548, 551 (Ohio 1964). However, the needs of the

patient to have his medical information remain confidential must be balanced against "the interest of the public in detecting crimes in order to protect society." *Id.* Where the evidence is necessary to the proper administration of justice, it is taken out of the physician-patient privilege. *See State v. Howard*, 158 S.E.2d 350, 351 (N.C. 1968).

¶22. The Supreme Court of Arkansas rejected the construction of the physician- patient privilege

> which would serve as a cloak for [a] crime. . .. The State has a vital interest in the protection of its citizens from acts of violence. It would be unreasonable to say that a physician must report his treatment of a gunshot wound to a peace officer, but that the State cannot call him to testify as to the nature, location, and extent of such wounds in a court of law.

*Freeman v. State*, 527 S.W.2d 909, 913 (Ark. 1975) (quoting *Wimberly v. State*, 228 S.W.2d 991 (Ark. 1950)).

¶23. "The privilege must be interpreted 'in sensible accommodation to the aim of a just result.'" *In the Interest of M.P.C.*, 397 A.2d 1092, 1095 (N.J. Super. Ct. App. Div. 1979) (quoting *State v. Briley*, 251 A.2d 442, 446 (N.J. 1969)). "Such a privilege is accepted only because. . .it serves a more important public interest than the need for full disclosure." *Id.* The purpose of the privilege is to allow a patient to seek treatment without fear of embarrassing disclosure so that he might reveal all of his symptoms to his physician. *Id.* "[T]he patient-physician privilege must give way where it conflicts with the sensible administration of the law and policy. . .." *Id.*

¶24. We will not allow the physician-patient privilege to serve as a cloak for a crime where a hospital is required to report this information to law enforcement officials under Miss. Code Ann. § 45-9-31, but neither will we allow the abuse of physician-patient confidentiality, and we find the guidelines included herein shall enhance public policy without commensurately damaging individual rights. This Court in an earlier decision held that hospital "records are admissible in evidence, since the law required that such records be kept. . .." *Motley v. State*, 174 Miss. 568, 576, 165 So. 296, 298 (1936). In the case presently before the Court, the medical records of persons treated by the BMH-GT were kept by the hospital. BMH-GT was required to report to law enforcement officials persons who were treated for injuries sustained as a result of a knifing. Miss. Code Ann. § 45-9-31 (1993). Based on our holding in *Motley*, the Court holds that the lower court erred by quashing the subpoena duces tecum and the search warrant requiring disclosure of the medical records as they pertained to the lacerations and cuts sustained by the patients.

¶25. BMH-GT directs this Court's attention to *In the Matter of a Grand Jury Investigation*, 456 N.Y.S.2d 586 (N.Y. App. Div. 1982). There the court refused to find exception to its physician-patient privilege by requiring disclosure of the names and addresses of patients treated for stab wounds. *Id.* The New York legislature "enacted exceptions to the privilege by requiring the reporting of incidents of child abuse and bullet wounds and **other wounds likely to result in death**. **Significantly, it has not required reporting of stab wounds not likely to result in death.**" *Id.* (emphasis added)(citations ommitted).

¶26. The New York statute is easily distinguishable from the Mississippi statute. The New York statute limited the type of wounds or injuries that must be reported to those types that would likely result in death. Mississippi provides no such similar limitation. The language in Miss. Code Ann. §

45-9-31 has no limiting language as to the types of knifing wounds that must be reported. The statute simply states that any health care professional, including a veterinarian, shall report an injury sustained as a result of a knifing. Miss. Code Ann. § 45-9-31 (1993). All knifings are to be reported. There is no requirement in the Mississippi statute that the knifing be of a type that will likely result in death. Therefore, the New York statute has no bearing on this Court's interpretation of Miss. Code Ann. § 45-9-31.

¶27. The lower court erred by quashing the subpoena duces tecum and the search warrant, though the circuit judge acted in strict and technical accordance with then existing law, for which he is commended. This case is reversed and remanded with instructions given by this Court as to what extent and by what manner the information requested should be disclosed.

¶28. The subpoena duces tecum requested all medical records of those patients treated on July 8-9, 1997, involving lacerations and cuts. The search warrant sought the names and addresses of persons treated for lacerations and cuts from July 8-16, 1997. Both documents should be read and interpreted according to Miss. Code Ann. § 45-9-31 and Miss. Code Ann. § 13-1-21. This would mean that disclosure of the requested information may be made with the following caveats.

¶29. A blanket disclosure of all medical records of the persons treated during the time enumerated listed in the subpoena duces tecum and the search warrant is not permissible reading Miss. Code Ann. § 45-9-31 and Miss. Code Ann. § 13-1-21 together. The only medical records that should be disclosed are the ones that pertain to any lacerations or cuts treated during the time frame listed in the documents. The search warrant only sought the names and addresses of those persons treated during the stated time frame.

¶30. Pursuant to Miss. Code Ann. § 45-9-31, hospitals should disclose to law enforcement officials the medical records of persons who have been treated for injuries sustained of a type described in the statute. These records are to have the patients' personal information[2] redacted, and only contain patient medical information as it pertains to that particular injury. This does not mean law enforcement investigators will be able go on a fishing expedition. The patients' records subject to preview will contain only information pertaining to treatment given to the patients during the time frame enumerated in the court documents. However, the disclosure is to encompass all of the information in the hospital's possession or knowledge regarding the patients' treatments for their injuries.

¶31. After the investigating officers have reviewed the records and determined which patient or patients suffered an injury that would make them a probable suspect, the officers must then obtain a subpoena duces tecum, search warrant, or court order mandating that the patients' identifying information be released to the law enforcement officials at that time so that the patients can be identified in order for the criminal investigation to go forward.

## CONCLUSION

¶32. The lower court erred by quashing the subpoena duces tecum and the search warrant. The information requested by the police was consistent with the information mandated by the legislature in Miss. Code Ann. § 45-9-31 to be reported by the hospital to law enforcement officials. Because this was an investigation into a homicide, public policy encouraging and expediting the detection,

investigation, and solving of crimes outweighs the privacy rights of individuals in order to protect the citizenry of Mississippi.

¶33. In the future, the disclosure of medical records should be done according to this Court's guidelines contained in this opinion. The investigation into a homicide or other serious felony should not be impeded by an entity or individual attempting to cloak vital information in the physician-patient privilege.

¶34. **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PITTMAN, P.J., SMITH, MILLS AND WALLER, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND BANKS, J. PRATHER, C.J., NOT PARTICIPATING.**


**BANKS, JUSTICE, DISSENTING:**


¶35. The majority holds that the subpoena duces tecum and the search warrant issued in this case request information to which the State is not entitled. It is therefore puzzling to me why the decision of the lower court is not affirmed. The State would always be free to request an appropriately limited subpoena or warrant. For these reasons, I respectfully dissent.

¶36. I agree that where the State has reason to believe that a medical care provider has not fulfilled its statutory duty to report certain injuries, the public policy evinced by Miss. Code Ann. § 45-9-31 (1993) permits the State to seek limited disclosure of redacted medical records. The State may then use these records to determine whether injuries went unreported which were nevertheless likely to have been caused by gunshots, knives or weapons similar to knives. The majority's reversal of the lower court's quashal of the subpoena and the search warrant is curious, however, in light of the fact that both of these documents seek the identifying information that the majority determines may not be disclosed. Under the majority's own construction of § 45-9-31, both documents are overbroad; yet it holds that the lower court erred by quashing them. In other words, the majority effectively holds that the lower court erred by following the law.[3]

¶37. The specific issue before this Court is whether the subpoena and the search warrant are overbroad in that they seek privileged information. The subpoena requests unredacted medical records; the search warrant requests names and addresses of patients. Both documents thus seek information which the majority expressly holds should be withheld until it is determined that a wound was likely caused by a knife or similar weapon. Accordingly, the lower court's quashal of the subpoena and the search warrant should be affirmed.

**McRAE, J., JOINS THIS OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶38. The physician/patient privilege recognizes both an individual's interest in avoiding disclosure of

personal matters and the providing physician's interest in maintaining the trust of his patient. The subpoena and search warrant issued in this case were both so broad as to unfairly encroach upon the statutory privilege. Is this Court now going to allow a daily subpoena for all medical records on possible suspected crimes? Because the majority incorrectly interprets requirements of hospitals under Miss. Code Ann. § 45-9-31, I dissent.

¶39. This is a clear case of the State going on a fishing expedition to gather information. This writer does not disagree with the majority's assertion that public policy dictates the release of certain medical information when criminal activity is implicated. Nevertheless, when such releases are made, the State must be careful not to totally ignore statutory notions of privilege and privacy. This case is a perfect example of what can happen when the State does ignore these notions.

¶40. The State did not even adhere to Miss. Code Ann. § 45-9-31, because it sought information about people who had suffered cuts or lacerations, which includes more than just "knifings." It need not be argued in detail here, but suffice it to say that cuts and lacerations can result from impact in vehicular accidents, recreational activities, or household mishaps. This is exactly the reason that the Legislature chose to use the word "knifings" in Miss. Code Ann. § 45-9-31; crimes involving the use of deadly weapons do warrant special treatment, and it is reasonable to require health care providers to report, upon reasonable belief and inspection, to the authorities those who are treated as a possible result of such activity. The majority's conclusion that "knifing" is substantially the same as "cuts or lacerations" is flawed. Giving the word "knifing" such a broad interpretation and allowing the State to use a subpoena and search warrant like the ones in this case would result in the release of extraneous confidential information regarding all of the patients treated in a variety of situations that may have resulted in cuts or lacerations. This Court should regard the use of the word "knifing" in the statute to be related to wounds inflicted by the misuse of a knife or other similar object. The Legislature provided no blanket exception to the physician/patient privilege, and this Court should not effectively apply one.

¶41. Further, the statute requires an exercise of reasonable judgment by the physician, nurse or hospital employee when reporting a patient to the police department or sheriff. Miss. Code Ann. § 45-9-31 does not require that medical records of every patient be turned over to the State; it only requires the reporting of specific individuals to the authorities. The statute also implies that if a physician, nurse, or hospital employee provides medical information about patients to the police under the statute, the determination reached is presumed to be reasonable. Without a showing by the State that the hospital in this case acted unreasonably in choosing not to report information to the police, it must be assumed that the hospital acted properly. The majority basically shows no faith that health care providers can act and have acted in accord with the requirements of Miss. Code Ann. § 45-9-31.

¶42. The caveats noted in the majority's treatment of this case also must be considered. Pursuant to Miss. Code Ann. § 45-9-31, hospitals are required to provide certain medical information to police. The appellee does not argue that this statutory requirement encroaches upon the physician/patient privilege. Accordingly, there is no need to redact information as a result of disclosure pursuant to statute. Rather, it is simply a matter of trusting hospitals and health care providers to follow the statute. In addition, while the majority suggests that disclosed medical records be redacted of patients' personal information, the majority does not make clear who will be privy to the information

released by hospitals. Without implementing the proper safeguards, broad dissemination of this medical information could implicate constitutionally protected privacy rights. This Court should consider more closely the possible adverse consequences to the patients that might flow from such a disclosure, especially in relation to those patients who are in no way related to any criminal activity.

¶43. Finally, it must also be noted that there remains a question as to establishment of probable cause here. As the majority notes, the tests to determine the source of blood on the bottle had not returned from the Mississippi Crime Lab before the grand jury subpoena of the hospital's medical records or before the search warrant. Absent this preliminary showing of probable cause, neither the grand jury subpoena nor the search warrant for medical records satisfies the requirements of the Fourth Amendment.

¶44. It is for the above stated reasons that I respectfully dissent. I would affirm the circuit court below.

**SULLIVAN, P.J., AND BANKS, J., JOIN THIS OPINION.**

1. Miss. R. Evid. 503(d) Exceptions.

   (1) Proceedings for Hospitalization. There is no privilege under this rule in a proceeding to hospitalize the patient for mental illness, if the physician or psychotherapist in the course of diagnosis or treatment has determined that the patient is in need of hospitalization.

   (2) Examination by Order of Court. If the court orders an examination of the physical, mental or emotional condition of a patient, whether a party or a witness, there is no privilege under this rule with respect to the particular purpose for which the examination is ordered unless the court orders otherwise.

   (3) There is no privilege under this rule as to an issue of breach of duty by the physician or psychotherapist to his patient or by the patient to his physician or psychotherapist.

2. Name, address, phone number, social security number, or anything else that could be used to identify the patients.

3. The majority opinion states that "[t]he lower court erred by quashing the subpoena duces tecum and the search warrant, though the circuit judge acted in strict and technical accordance with then existing law, for which he is commended."