# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-00710-SCT

*DAVID DICKERSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/12/2018 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| TRIAL COURT ATTORNEYS: | BRAD A. SMITH |
| | JASON L. DAVIS |
| | ALEXANDER KASSOFF |
| | HUMPHREYS McGEE |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF POST-CONVICTION COUNSEL |
| | BY: ALEXANDER KASSOFF |
| | HUMPHREYS McGEE |
| | SCOTT A. JOHNSON |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BRAD A. SMITH |
| | JASON L. DAVIS |
| | ASHLEY LAUREN SULSER |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | AFFIRMED - 03/05/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. A jury convicted David Dickerson of capital murder, arson and armed robbery and sentenced him to death for capital murder. He was sentenced to twenty years for arson and forty years for armed robbery, to run consecutively. Dickerson appealed his convictions and

sentences, and the Court affirmed. *Dickerson v. State*, 175 So. 3d 8, 12 (Miss. 2015). Dickerson then instituted post-conviction collateral relief proceedings. Dickerson claims he is incompetent to proceed with the post-conviction proceedings; so the Court remanded the case and ordered the trial court to determine whether Dickerson was competent to proceed in post-conviction proceedings. The trial court found Dickerson competent. Dickerson now appeals that finding.

## FACTS AND PROCEDURAL HISTORY

¶2. A grand jury indicted Dickerson for capital murder, arson and armed robbery. Dickerson moved for a determination of his competency to stand trial. The court appointed Dr. Criss Lott to evaluate Dickerson. Dr. Lott determined that further observation was needed to determine the nature and severity of Dickerson's mental illness and to rule out the possibility of malingering. Accordingly, Dickerson was sent to be evaluated by Dr. Robert Storer and Dr. Reb McMichael at the State Hospital at Whitfield for two months. The trial court then held a competency hearing at which all three doctors testified that Dickerson was competent to stand trial according to the standard articulated in *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960).[1] Dickerson offered no witnesses or evidence of his own at the hearing. The trial court found that Dickerson was competent to

---

[1] To be deemed competent to stand trial under the *Dusky* standard, the "defendant must have the 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and . . . a rational as well as factual understanding of the proceedings against him.'" *Beasley v. State*, 136 So. 3d 393, 398 (Miss. 2014) (quoting *Dusky*, 362 U.S. at 402).

stand trial according to the *Dusky* standard and then held the trial in July 2012. The jury found Dickerson guilty on all three charges and recommended the death penalty. Dickerson appealed to this Court. On appeal, "Dickerson raise[d] ten assignments of error[,]" including that "the trial court erred in finding [him] competent to stand trial." *Dickerson*, 175 So. 3d at 14. The Court held that the trial court's finding that "Dickerson was competent to stand trial was . . . not manifestly against the overwhelming weight of the evidence." *Id.* at 17. The Court ultimately affirmed Dickerson's conviction and death sentence. *Id.* at 35.

¶3.     After his direct appeal, Dickerson filed for post-conviction relief and moved to stay the post-conviction proceedings, claiming that he was not competent to proceed. The Court granted his motion and remanded the matter to the trial court for a determination of Dickerson's competency to proceed before the Court in post-conviction relief proceedings.

¶4.     The trial court held a competency hearing in February 2018 at which Dr. Storer and Dr. Malcolm Spica both testified that they had examined Dickerson to evaluate his competency, and the doctors were both accepted as experts at the hearing. Dr. Storer testified that Dickerson was competent to proceed because Dickerson possessed a factual and rational understanding of post-conviction proceedings and had the ability to consult with his attorneys. Dr. Spica also testified that Dickerson had the ability to communicate with his attorneys, but Dr. Spica's report supported Dickerson's contention that he did not have a rational or factual understanding of post-conviction proceedings. After hearing the doctors' testimonies and reviewing both of the doctors' written reports, the trial court found

3

Dickerson competent to proceed. Dickerson now appeals the trial court's decision.

## STANDARD OF REVIEW

¶5.     A trial court's findings regarding competency will not be overturned unless the trial court's decision was "manifestly against the overwhelming weight of the evidence." *Beasley v. State*, 136 So. 3d 393, 398 (Miss. 2014) (internal quotation marks omitted) (quoting *Martin v. State*, 871 So. 2d 693, 698 (Miss. 2004)).

## DISCUSSION

¶6.     Dickerson raises two assignments of error in this appeal. First, he claims that the trial court's determination that he was competent to proceed in post-conviction relief proceedings was manifestly against the overwhelming weight of the evidence. Second, Dickerson claims that the trial court erred by failing to accede to Dickerson's assertion that the standard set forth in *Dusky* and *Gammage v. State*, 510 So. 2d 802 (Miss. 1987),[2] is the only standard for evaluating a petitioner's competency to proceed in post-conviction proceedings in a Mississippi court and by failing to apply the *Dusky/Gammage* standard to determine

---

[2]In *Gammage*, the Court applied the *Dusky* standard and held that "[a] defendant not competent to stand trial is one who does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, or does not have a rational as well as a factual understanding of the proceedings against him." *Gammage*, 510 So. 2d at 803 (emphasis omitted) (citing *Dusky*, 362 U.S. at 402).

4

Dickerson's competency to proceed.[3]

> **I.** **Whether the trial court's determination that Dickerson was competent to proceed in post-conviction relief proceedings was manifestly against the overwhelming weight of the evidence.**

¶7. Dickerson raises two main issues in his argument that the trial court's determination of his competency was manifestly against the overwhelming weight of the evidence. First, Dickerson argues that the trial court's reliance on Dr. Storer's report is misplaced. Second, Dickerson claims that the trial court erred by failing to admit Dr. Spica's report into evidence and that Dr. Spica's report should have been relied upon by the trial court.

### A. Dr. Storer's Report

¶8. Dickerson asserts the trial court should not have relied on Dr. Storer's report and testimony because Dr. Storer, in reaching his conclusion, (1) erred by finding that Dickerson did not have a severe and persistent mental illness; (2) incorrectly relied on his belief that

---

[3]The State makes a cursory claim that there is no constitutional right to competency in post-conviction proceedings. Dickerson argues to the contrary. We decline to address the issue because it is not necessary to decide the case.

"It is well-settled by the decisions of this Court that a constitutional question will be passed on where the issues involved in a particular case are such that the case may be decided on other grounds." ***Warner-Lambert Co. v. Potts***, 909 So. 2d 1092, 1093 (Miss. 2005) (citing ***Broadhead v. Monaghan***, 117 So. 2d 881, 888 (Miss. 1960)). "This Court has previously stated that when there is no necessity to reach a question, we will not." ***Id.***

"As this Court stated in ***Kron v. Van Cleave***, 339 So. 2d 559, 563 (Miss. 1976), 'courts will not decide a constitutional question unless it is necessary to do so in order to decide the case.'" ***Scott ex rel. Scott v. Flynt***, 704 So. 2d 998, 1007 (Miss. 1996); *see also* ***Johnson v. Mem'l Hosp. of Gulfport***, 732 So. 2d 864, 866 (Miss. 1998).

marked cognitive deficits in executive functioning are not accepted as mental defects that significantly interfere with competency-related abilities; (3) lacked an understanding of post-conviction relief proceedings, including what level of assistance an attorney requires of a petitioner during the proceedings; and (4) failed to administer any standard test for evaluating competency.

### 1. Severe and Persistent Mental Illness

¶9. Dickerson argues that schizophrenia is a severe and persistent mental illness and that Dr. Storer's diagnosis that Dickerson did not have schizophrenia based on the lack of symptoms Dickerson displayed was erroneous. The State argues that Dickerson failed to cite any relevant authority to support this contention. "Failure to cite relevant authority obviates the appellate court's obligation to review such issues." *Arrington v. State*, 267 So. 3d 753, 756 (Miss. 2019) (internal quotation marks omitted) (quoting *Byrom v. State*, 863 So. 2d 836, 853 (Miss. 2018)).

¶10. Regardless of Dickerson's failure to cite authority to support his contention, this Court has held that a person suffering from schizophrenia may still be competent to stand trial as well as competent to be executed. *Hearn v. State*, 3 So. 3d 722, 736, 736 n.19 (Miss. 2008) (citing *Indiana v. Edwards*, 554 U.S. 164, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008)); *Billiot v. State*, 655 So. 2d 1, 17 (Miss. 1995).

¶11. Dickerson argues that Dr. Storer erred by determining that Dickerson did not suffer from schizophrenia because Dickerson had been previously diagnosed with the illness in

1997 by another doctor. Dr. Storer explained that he disagreed with the previous diagnosis because Dickerson's symptoms at the time Dr. Storer evaluated him were not consistent with schizophrenia. Dickerson argues that his symptoms of schizophrenia were merely in remission when Dr. Storer observed him for this competency hearing. He further argues that according to the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), a psychologist seeing a patient during remission might fail to detect symptoms of the illness. Dr. Storer, however, testified at the hearing that the DSM-5 states that "[n]egative symptoms are more closely related to prognosis than are positive symptoms and tend to be the most persistent." Accordingly, Dr. Storer testified that the signs of the remaining, underlying negative symptoms would be fairly obvious to a trained psychologist. In his report, Dr. Storer noted that Dickerson's emotional functioning was good and that his eye contract was also appropriate. Based on Dickerson's failure to display any signs of underlying negative symptoms associated with schizophrenia, Dr. Storer concluded that Dickerson did not have schizophrenia.

¶12. Regardless of the procedural bar to this claim for failure to cite relevant authority, we find that Dr. Storer's conclusion that Dickerson did not suffer from a severe and persistent mental illness was reasonably based on the DSM-5. Therefore the trial court's finding that Dickerson did not suffer from a severe and persistent mental illness was not manifestly against the overwhelming weight of the evidence

### 2. Cognitive Deficits in Executive Functioning Related to Competency

7

¶13.    Dickerson argues that Dr. Storer incorrectly stated that cognitive deficits in executive functioning are irrelevant and not accepted as mental defects that significantly interfere with competency-related abilities.  The State argues that Dickerson's claim is barred because he failed to cite relevant legal authority to support it, because he failed to object to Dr. Storer's being allowed to testify as an expert in the fields of clinical and forensic psychology and because the doctrine of *res judicata* bars his contention that his cognitive deficits in executive functioning render him incompetent.

¶14.    Notwithstanding the procedural bars, Dr. Storer was accepted as an expert in the fields of clinical and forensic psychology and actually refused to testify to what Dickerson claims.  At the competency hearing, Dr. Storer refused to testify that cognitive deficits in executive functioning are irrelevant to a court's finding of competency.  Instead, he testified that cognitive deficits in executive functioning, alone, are not recognized as "a sufficient foundation for a finding of [in]competence" in any jurisdiction of which he is aware.  Even so, Dr. Storer explained that the severity of the dysfunction should determine whether the deficit in executive functioning alone could support a finding of incompetence and offered an example of severe memory impairment due to head trauma as an instance in which a cognitive deficit in executive functioning could support a determination of incompetency on its own.  Those circumstances, however, are not present in Dickerson's case.

¶15.    Dr. Storer noted that executive functioning is one part of many to be considered in a finding of competency.  He listed criteria for determining whether a person has a cognitive

8

deficit in executive functioning. He further testified that the mere presence of a deficit in executive functioning in a person does not automatically mean that the person will also have deficits in their competency-related abilities.

¶16. Dr. Storer also pointed out that at the hearing held before Dickerson's trial to determine his competency to stand trial, Dr. Lott testified that, despite Dickerson's having cognitive deficits, he was competent to stand trial. According to the standard of competency Dickerson asserts should apply in post-conviction proceedings, coupled with his failure to offer any evidence that his cognitive deficits in executive functioning have changed since his pretrial competency hearing, this contention is barred by the doctrine of *res judicata*.

¶17. The trial court's finding that Dickerson did not have deficits in executive functioning severe enough to render him incompetent to proceed in post-conviction proceedings was not manifestly against the overwhelming weight of the evidence.

> 3. *Dr. Storer's and Dickerson's Understandings of Post-Conviction Proceedings*

¶18. Dickerson argues that neither he nor Dr. Storer has a factual understanding of post-conviction proceedings or of what a petitioner must be able to do to assist post-conviction counsel. Dickerson's counsel argues that post-conviction proceedings, while backward looking, also involve an analysis of new facts and claims that Dickerson does not have a factual understanding of the nature of these proceedings. The State disagrees and argues that Dr. Storer and Dickerson both possess a factual understanding of post-conviction

9

proceedings.

¶19.    The purpose of the Mississippi Uniform Post-Conviction Collateral Relief Act "is to provide prisoners with a procedure, limited in nature, to review those objections, defenses, claims, questions, issues or errors which in practical reality could not be or should not have been raised at trial or on direct appeal."  Mississippi Code Section 99-39-3(2) (Rev. 2015).

¶20.    Dickerson uses his own statement, as recorded in Dr. Storer's report, to support his contention that he lacks sufficient understanding of post-conviction proceedings.  When Dr. Storer asked him what sorts of questions his post-conviction attorneys were asking him when they met, he replied, "They're going on what they already know.  That's the way post-conviction is.  They're going on everything that's already been written."

¶21.    Dickerson also claimed that he had sent letters to his post-conviction counsel regarding his post-conviction proceedings but that he had yet to receive a reply.  While this act does not necessarily mean that Dickerson has the ability to effectively communicate with his counsel, it at least shows that he possesses a willingness to communicate with his counsel and has made an active and rational effort to do so.

¶22.    Dickerson then argues that Dr. Storer does not understand the nature of post-conviction proceedings either.  He offers Dr. Storer's testimony at the competency hearing at which Dr. Storer stated, "In my consultations with attorneys . . . I have been advised . . . that post-conviction review is primarily a review of the records to make sure that everything . . . was done correctly and in accordance with the rules and procedures as they stood at the

time of the trial," to support his argument. Dickerson, however, prematurely cuts off Dr. Storer's statement from his testimony at the competency hearing. In the next sentence of his testimony, Dr. Storer stated,

> [Post-conviction review] also includes[s] new things. For example, the *Atkins* ruling by the Supreme court. That ended up being applied retrospective[ly]. *Miller v. Alabama* rulings have been applied retrospectively. So even though those may not have applied at the time of the trial, . . . in post-conviction proceedings, they may be brought up if they applied and were not brought up [at trial]. My understanding is that all of that is encompassed in post-conviction review.

¶23. At the hearing, Dr. Storer also testified that it was his understanding that post-conviction attorneys are supposed to engage in investigation of facts that were not presented at trial. Dr. Storer's statement from his testimony, read in totality, does not support Dickerson's argument that Dr. Storer lacks an understanding of the nature of post-conviction proceedings.

¶24. Dr. Storer explained that he used his understanding of the nature of post-conviction proceedings in determining that Dickerson possesses a reasonable, factual and rational understanding of the proceedings. Therefore, the trial court's finding that Dickerson had a rational understanding of the nature of post-conviction relief proceedings was not manifestly against the overwhelming weight of the evidence.

11

### 4. *Methods Dr. Storer Used to Evaluate Dickerson's Competency*

¶25. Dickerson argues that because Dr. Storer failed to perform any standard tests for competency, specifically the MacArthur Competence Assessment Tool - Criminal Adjudication (MacCAT-CA), his report on Dickerson's competency is inaccurate and should not be relied upon by the trial court. Once again, the State argues that because Dickerson failed to cite any authority to support his argument, the issue is procedurally barred and the Court is under no duty to review it. The State also argues that Dickerson waived review of this issue by failing to object to Dr. Storer's methods before or during the competency hearing. The State further argues that because Dickerson stipulated his acceptance of Dr. Storer as an expert in the fields of clinical and forensic psychology, he is barred from raising issue with the methods used. Notwithstanding these procedural bars, the methods and test Dr. Storer administered during his evaluation were reliable.

¶26. Dickerson claims that the MacCAT-CA is the best known and most widely used test by practitioners when competency is at issue. Dickerson asserts that the MacCAT-CA is an evaluation procedure used to determine a defendant's ability to understand the nature of the proceedings. Dr. Storer claims, however, that the MacCAT-CA does not apply here.

¶27. Dr. Storer testified the MacCAT-CA is intended to assess a defendant's competency to stand trial only and that it is not intended to assess any other types or levels of competency. He also testified that he believes that competency to proceed in post-conviction proceedings is very different from competency to stand trial because of the difference in the required

12

abilities to perform varying types of tasks at each stage. Accordingly, Dr. Storer testified that he would only administer the MacCAT-CA in an evaluation to assess competency to stand trial and not in an assessment of any other level or sort of competency, including competency to proceed in post-conviction proceedings. Instead of the MacCAT-CA, Dr. Storer administered the Personality Assessment Inventory (PAI) to Dickerson in order to obtain objective information for diagnostic clarification. Dr. Storer's written report states that "[t]he PAI is a self-administered, objective inventory of adult personality designed to provide information on critical clinical variables." Dr. Storer noted that he "would have loved to have given a direct measure of competence, but there is no competence assessment measure that directly looks at post-conviction competence."

¶28. Dr. Storer's failure to administer a test designed strictly for determining competency to stand trial did not render his opinion regarding Dickerson's competency to proceed in post-conviction proceedings incorrect or unreliable. Therefore, the trial court's finding was not manifestly against the overwhelming weight of the evidence.

¶29. We find each error Dickerson alleges Dr. Storer committed in his evaluation of Dickerson to be without merit. The trial court properly considered Dr. Storer's report.

### B. Dr. Spica's Report

¶30. Dickerson argues that the trial court erred by failing to rule on the admissibility of Dr. Spica's report and further claims that the report should have been admitted because its conclusion that Dickerson was incompetent to stand trial was reliable. Dickerson further asserts that the report should have been admitted because it was competent and relevant

13

evidence. The State argues that Dickerson's failure to obtain a ruling on his motion to admit the evidence constitutes a waiver. The State claims that despite the waiver, the trial court committed no error because it did not exclude the report and did consider it in determining Dickerson's competency to proceed in post-conviction relief proceedings.

¶31. "[I]t is the responsibility of the movant to obtain a ruling from the court on motions . . . and failure to do so constitutes a waiver." *Smith v. State*, 986 So. 2d 290, 296 (Miss. 2008) (internal quotation marks omitted) (quoting *Evans v. State*, 725 So. 2d 613, 708 (Miss. 1997)). "[I]t is the duty of the objecting party to obtain a ruling from the trial court on objections, and . . . if the record includes no ruling by the trial court, the objections are waived for purpose of appeal." *Rials v. Duckworth*, 822 So. 2d 283, 288 (Miss. 2002) (citing *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 120 (Miss. 1999)).

¶32. The facts of *Franklin v. Lovitt Equip. Co., Inc.*, 420 So. 2d 1370, 1372 (Miss. 1982), are similar to what occurred here. In *Franklin*, the appellant claimed that the trial court failed to consider parol evidence that the appellant offered to the court even though the record "clearly indicate[d] that the testimony in question was permitted to be introduced into evidence . . . ." *Id.* The appellant argued that the trial court failed to consider the evidence based on the fact that the trial court reserved ruling on the admissibility of the evidence when it was presented and then failed to enter a definitive ruling on its admissibility before rendering a final decision. *Id.* This Court concluded, "Although the chancellor never ruled on this issue, it must be assumed that he considered the parol evidence in rendering his final

14

decision." *Id.*

¶33.   At Dickerson's competency hearing, Dickerson moved to have Dr. Spica's report admitted into evidence, and the State objected based on relevancy.  The trial court allowed Dr. Spica's report to be marked for identification, noted the objection and reserved ruling on the admission of the report into evidence.  After the conclusion of Dr. Spica's testimony, the State renewed its objection to Dickerson's motion to admit Dr. Spica's report, and, again, the trial court reserved ruling on the matter.  It was not until after both parties filed post-hearing briefs and the trial court had issued its Memorandum Decision and Order that Dickerson renewed his motion to admit Dr. Spica's report into evidence.

¶34.   Dickerson argues that Dr. Spica's report should have been admitted as relevant evidence by citing Mississippi Rule of Evidence 401, which states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the case."  Miss. R. Evid. 401. Although the trial court failed to rule on the admissibility of Dr. Spica's written report, it is clear that the trial court considered it from the language the court used in its Memorandum Decision and Order.  In that order, the trial court wrote that it reviewed the written reports of both Dr. Storer and Dr. Spica in its determination of Dickerson's competency to proceed in post-conviction proceedings.

¶35.   We find that any error the trial court may have committed by failing to rule on the admissibility of Dr. Spica's report would be a harmless error because the trial court did

15

consider Dr. Spica's written report in its determination of Dickerson's competency.

¶36. The trial court found Dickerson competent to proceed in post-conviction collateral relief proceedings after considering the conflicting evidence produced by each party and the conflicting reports and testimonies of the experts. When conflicting evidence capable of more than one reasonable interpretation is presented to the court, the trial judge, as with any finder of fact, is entitled to determine the credibility of the witnesses and the weight to afford their testimony. *Trim v. Trim*, 33 So. 3d 471, 479 (Miss. 2010). Therefore, we find that it was within the discretion of the trial court to weigh the credibility of the doctors' conflicting testimony and to choose between their competing interpretations. The trial court's determination that Dickerson is competent to proceed was not manifestly against the overwhelming weight of the evidence.

**II.** **Whether the trial court erred by failing to apply the** *Dusky/Gammage* **Standard to determine competency to proceed in post-conviction relief proceedings.**

¶37. Dickerson argues that the ***Dusky/Gammage*** standard is the only standard that exists for determining competency in a Mississippi courtroom. At the competency hearing, the State proffered that the standard for competency in post-conviction proceedings should be that the "[p]etitioner is competent to proceed in post-conviction review proceedings if he has sufficient present ability to consult with his attorneys with a rational understanding as to facts relevant to his case."

¶38. The trial court noted that neither party cited any controlling authority setting forth the

16

standard that either asserted was applicable to competency determinations for post-conviction relief proceedings. The trial court even addressed standards for competency used by other states for competency determinations in post-conviction. The trial court explained that in Florida, a petitioner must identify specific factual matters that require competent consultation with counsel, and in Illinois, a petitioner must show why personal communication would be required between petitioner and counsel.

¶39. The trial court found that Dickerson has the sufficient present ability to consult his attorneys with a reasonable degree of rational understanding in investigating, preparing and presenting claims for post-conviction relief, as well as a rational and factual understanding of the nature and object of post-conviction proceedings. According to these findings of fact, the trial court determined that Dickerson was competent to proceed in post-conviction relief proceedings under any of the standards proffered by the parties or under the standards used by other states that acknowledge a right to competency during the post-conviction collateral relief stage.

**CONCLUSION**

¶40. After reviewing the record, we find that the trial court's determination that Dickerson is competent to proceed in post-conviction collateral relief proceedings was not manifestly against the overwhelming weight of the evidence.

¶41. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. COLEMAN, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY MAXWELL AND BEAM, JJ.**

17

**COLEMAN, JUSTICE, SPECIALLY CONCURRING:**

¶42. I concur with the majority's reasoning and result. I write separately to address the State's argument that Dickerson has no right to competency during his post-conviction collateral relief proceedings.

¶43. In short, the State is correct that we have never held that a petitioner enjoys a statutory or constitutional right to competency during post-conviction proceedings. Dickerson supports his position that a post-conviction petitioner has a right to competency with *Neal v. State*, in which the Court wrote in perfunctory fashion that a defendant must be competent at all stages of the criminal process, including post-conviction. *Neal v. State*, 687 So. 2d 1180, 1183 (Miss. 1996) (citing *Rumbaugh v. Procunier*, 753 F.2d 395 (5th Cir. 1985)). However, *Rumbaugh* does not concern the issue of whether a party has the right to be competent in post-conviction proceedings. Instead, the *Rumbaugh* Court considered whether one must be competent to waive a right to collateral review. *Rumbaugh v. Procunier*, 753 F.2d 395, 398 (5th Cir. 1985) (citing *Rees v. Peyton*, 384 U.S. 312 (1966)). Dickerson and—more importantly—the *Neal* Court misinterpret *Rumbaugh*. *Id.* at 402. Nothing in *Rumbaugh* confers a right to competency at the post-conviction stage of criminal proceedings. Again, *Rumbaugh* addressed the right to be competent when waiving appeals and collaterally attacking convictions and sentences. *Rumbaugh*, 753 F.2d at 398. As such, it speaks not at all to the question presented here—whether the Mississippi Post-Conviction Collateral Relief Act or the Mississippi Constitution provide a statutory right to competency during post-conviction proceedings.

¶44.  In today's case, the Court granted Dickerson's request for a competency hearing by order.  The hearing having been heard and the determination that Dickerson is competent having been made (and now affirmed), it indeed seems a bit late in the current game to address the issue.  It remains, however, a question that the Court should one day answer.

**MAXWELL AND BEAM, JJ., JOIN THIS OPINION.**